# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 20, 2016 Session

## ROSALYN SMALL v. MEMPHIS-SHELBY COUNTY AIRPORT AUTHORITY

**Appeal from the Chancery Court for Shelby County**
**No. CH1407621     Walter L. Evans, Chancellor**

_____

**No. W2015-01090-COA-R3-CV – Filed July 20, 2016**
_____

This appeal arises from the Memphis-Shelby County Airport Authority's decision to terminate Appellee's employment. Appellee was employed as a police sergeant with the Memphis-Shelby County Airport Authority. Appellee received a nine-day suspension from work for insubordination and conduct unbecoming. The suspension also included a requirement that Appellee undergo a fitness for duty assessment before returning to work. Appellee reported for her fitness for duty assessment, but a disagreement with the psychologist performing the assessment over whether she could record the clinical interview resulted in the interview not being completed that day. The Airport Authority consequently terminated Appellee's employment on the basis that she was noncompliant with the order to undergo the fitness for duty assessment. Appellee appealed the decision to the Civil Service Commission, which upheld the termination. Appellee then filed a petition for judicial review to the Shelby County Chancery Court, which overturned the Civil Service Commission's decision. The Airport Authority appeals.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which ANDY D. BENNETT and BRANDON O. GIBSON, JJ., joined.

Todd P. Photopulos and Brent E. Siler, Memphis, Tennessee, for the appellant, Memphis-Shelby County Airport Authority.

David M. Sullivan, Memphis, Tennessee, for the appellee, Rosalyn Small.

## OPINION

### I. Background

Rosalyn Small ("Appellee") began working for the Memphis-Shelby County Airport Authority ("Airport Authority" or "Appellant") as a police officer in 1999. In 2004, she received a promotion to the rank of sergeant. During her employment, Sergeant Small consistently received ratings of meeting or exceeding standards on her performance evaluations. In 2003 and 2004, she was assigned as her department's professional standards officer for accreditation through the Commission on the Accreditation of Law Enforcement Agencies, and she continued to assist her department in subsequent years in the reaccreditation process. Sergeant Small's employment troubles at the Airport Authority began in 2011 when she was assigned to Lieutenant Mark Williams's shift.

In an "Observed Behavior Report" dated March 3, 2011, Lieutenant Williams, Sergeant Small's shift supervisor, stated that Sergeant Small "became upset" with the way he managed the shift roster for that day and that she refused to conduct the daily squad meeting after Lieutenant Williams ordered her to do so. The report stated that Sergeant Small went home sick instead of conducting the squad meeting. The report concluded that Sergeant Small had "created conflict instead of working cooperatively and harmoniously with [her] supervisor" and that she had "circumvented a direct order when [she] failed to conduct the squad meeting." In a written response to the behavior report, Sergeant Small contested the version of events reported and stated that she did not disagree with how Lieutenant Williams managed the shift roster but, rather, was trying to point out differences between the shifts that Lieutenant Williams was not taking into account.

On November 23, 2011, Sergeant Small placed an airline passenger in custody for having a firearm in his carry-on luggage. Sergeant Small called Lieutenant Williams to inform him of the situation. Sergeant Small and Lieutenant Williams reported different versions of this event. Sergeant Small and Lieutenant Williams also gave differing accounts of a request for sick leave that Sergeant Small submitted on November 24, 2011.

In a written reprimand issued to Sergeant Small on December 6, 2011, Lieutenant Williams wrote that he directly ordered Sergeant Small to arrest the passenger and charge him with unlawful possession of a firearm. Instead, Sergeant Small charged the passenger with a violation of Tennessee Code Annotated Section 39-17-109, which states, in pertinent part, that it is unlawful to enter the "sterile area of an airport serving the general public, if the…entry is in violation of or contrary to security requirements established by federal

regulation." After discovering that the passenger had only been charged under Tennessee Code Annotated Section 39-17-109, Lieutenant Williams ordered another Airport Authority Officer to go to the Criminal Justice Center to add a second charge on the "arrest ticket."

Also, according to the written reprimand, on November 24, 2011, Lieutenant Williams ordered Sergeant Small to take over for another officer who requested to leave at approximately 6:30 PM. Shortly after receiving this order, Sergeant Small requested to leave work early. Lieutenant Williams denied her request. Sergeant Small then informed Lieutenant Williams that she was sick and left her shift at 6:40 PM. Lieutenant Williams's written reprimand concluded that Sergeant Small's behavior was "inappropriate, illustrate[d] [Sergeant Small's] continued insolent behavior," and violated the Airport Authority's policies.

In a written appeal of her reprimand dated December 7, 2011, Sergeant Small disputed Lieutenant Williams's version of events. Sergeant Small stated that she was never ordered by Lieutenant Williams to charge the passenger with unlawful possession of a weapon and that she would have charged the passenger with that offense if Lieutenant Williams had actually issued such an order. Sergeant Small also contended that she had previously been informed that Airport Authority policy was to charge passengers in possession of a firearm with unlawful possession of a firearm only if they did not have a handgun carry permit. The airline passenger in question had a carry permit. Sergeant Small also stated that her request to leave early on November 24, 2011 was reasonable because there were enough Airport Authority officers on duty to cover the shift without her presence.

On January 5, 2012, Captain Derek Dean and Captain Karen Davis met with Sergeant Small to address issues with Sergeant Small's work performance. At the meeting, Captain Dean observed that Sergeant Small became agitated when her interactions with Lieutenant Williams became a topic of conversation. During the meeting, Sergeant Small stated that Lieutenant Williams was unfairly scrutinizing her job performance. Captain Dean and Captain Davis also addressed Sergeant Small's relationship with another co-worker. On January 10, 2012, Sergeant Small wrote a letter to Julie Stewart, the Airport Authority's Manager of Human Resources, detailing various instances in which Sergeant Small asserted that Lieutenant Williams had created a "hostile, harassing, and intimidating work environment."

In response to Sergeant's Small's letter, Ms. Stewart conducted a series of meetings regarding Sergeant Small's accusations. Ms. Stewart first met with Chief Chad Beasley and Captain Derek Dean to discuss the nature of Sergeant Small's complaints. Ms. Stewart then met with Sergeant Small and George Mabon, the Vice President of Human Resources for the Airport Authority. Ms. Stewart also met separately with Lieutenant Williams and Mr. Mabon. In a confidential memo dated February 13, 2012, Ms. Stewart concluded that "the

incidents outlined…do not substantiate Lt. Williams' actions as creating a hostile or intimidating work environment." Ms. Stewart also recommended that Lieutenant Williams and Sergeant Small participate in counseling sessions together. Ms. Stewart further recommended that additional counseling for Sergeant Small "may also be beneficial to help her cope with all that is going on and to address her anger and apparent emotional state. This should come in the form of a formal management referral."

In a letter dated February 15, 2012, Ms. Stewart informed Sergeant Small that she did not find that Lieutenant Williams had created a "hostile, harassing, or intimidating work environment." The letter also referred Sergeant Small to the Employee Assistance Program ("EAP") for mandatory counseling. The letter further informed Sergeant Small that Lieutenant Williams was also being referred for separate, mandatory counseling.

On May 3, 2012, Lieutenant Williams met with Sergeant Small to discuss Sergeant Small's behavior. Lieutenant Williams asked Sergeant Mark Lott to sit in the meeting as a witness. In an inter-departmental memo written by Sergeant Lott, he observed that Sergeant Small was very argumentative with Lieutenant Williams and that Sergeant Small was acting in an "unprofessional and disrespectful" manner. Sergeant Lott's memo also states that Sergeant Small began to yell while arguing with Lieutenant Williams. In response to Sergeant Small's behavior, Lieutenant Williams left the meeting to find Captain Dean. When Lieutenant Williams returned with Captain Dean, Sergeant Small argued with both of them regarding Lieutenant Williams's orders. In response, Captain Dean ended the meeting until after roll call. While Lieutenant Williams was conducting roll call, Sergeant Lott and other officers allegedly observed Sergeant Small crying in the back of the room.

In a letter dated May 4, 2012, Julie Stewart informed Sergeant Small that she was being placed on paid administrative leave. The leave was "pending the outcome of an investigation regarding the events that occurred on May 3, 2012 that lead to Chad Beasley, Chief of Public Safety relieving you of duty." In a letter dated May 10, 2012, Chief Chad Beasley informed Sergeant Small that she was being charged with violations of the Memphis Airport Police Department Procedure Manual for unbecoming conduct and insubordination. The letter quoted the Airport Authority's regulation 01.02 II D, which states:

> Member of the department shall at all times, both on and off duty, conduct themselves in such a manner as to reflect most favorably on the Department. Unbecoming conduct shall include that which bring the Department into disrepute, reflect discredit upon the individual as a member of the Department, or impairs the operation of the Department or the efficiency of the member.

The letter also quoted regulation 104.35, which states:

- 4 -

Management reserves the right to exercise the broadest possible discretion and may bypass one or more of the progressive measures discussed above based on individual circumstances. Some conduct may be so severe as to warrant immediate discharge without reprimand or suspension. Examples of such conduct include, but are not limited to, the following: refusing to comply with a supervisor's instructions or insubordination.

The letter also informed Sergeant Small that the hearing on the charges would take place on May 16, 2012.

Following the hearing, in a letter dated May 18, 2012, Chief Beasley informed Sergeant Small that she would receive a nine-day suspension without pay as punishment for the incident on May 3, 2012. This suspension was to run from May 20, 2012 until May 30, 2012. The letter also stated that

On May 3, 2012, you were relieved of duty and placed on administrative leave. You will not be permitted to return to work until a psychological evaluation is completed by a licensed health care professional and you are deemed fit for duty. The cost of this evaluation will be paid by the Airport Authority and coordinated by Human Resources. In the event that your evaluation is not completed by the end of your suspension period, you will be placed back on paid administrative leave.

On May 22, 2012, Sergeant Small notified the Airport Authority that any further communication regarding her fitness for duty evaluation ("FFDE") would need to be sent to her attorney, David Sullivan. In a letter dated May 31, 2012, Mr. Brian Kuhn, acting as general counsel for the Airport Authority, informed Sergeant Small's attorney that her fitness for duty exam was scheduled for June 4, 2012 at the office of Dr. Edward Wise.

Sergeant Small arrived early for her scheduled appointment at Dr. Wise's office. Upon arrival, she was presented with several forms to sign. The documents included an agreement for Sergeant Small to pay for Dr. Wise's services, an acknowledgment that she was seeking treatment voluntarily, and a release of liability. After reviewing the documents, Sergeant Small asked to speak with Dr. Wise, but he was not available. Sergeant Small then offered to take the tests required for the evaluation but refused to sign the forms. When Dr. Wise's staff did not permit her to do so without signing all the forms provided, Sergeant Small left Dr. Wise's office. Later that same day, Mr. Sullivan notified Mr. Kuhn that Dr. Wise had not been present at Sergeant Small's appointment and that several of the forms required of Sergeant Small were inappropriate, especially the form requiring Sergeant Small to pay for Dr. Wise's services. The Airport Authority had previously agreed to cover the costs of the FFDE.

- 5 -

In a letter dated June 5, 2012, Mr. Kuhn acknowledged that some of the forms provided Sergeant Small by Dr. Wise's office were erroneous and that some of the other forms "may or may not have been appropriate or misinterpreted…." The letter also acknowledged that Sergeant Small had made an effort to participate in the FFDE. Accordingly, the letter stated that Sergeant Small's FFDE would be rescheduled with Dr. Lisa Alex. Dr. Alex had not previously performed an FFDE for the Airport Authority.

Sergeant Small first reported to Dr. Alex's office on June 13, 2012. On that date, she completed the Minnesota Multiphasic Personality Inventory and other clinical assessments. As instructed, Sergeant Small returned to Dr. Alex's office on June 20, 2012 for the clinical interview. At this appointment, upon the advice of counsel, Sergeant Small informed Dr. Alex of her intent to record the interview session. Dr. Alex refused to allow the session to be recorded. Dr. Alex decided the interview would be postponed until she could contact the Airport Authority to determine how to proceed. Sergeant Small then left Dr. Alex's office to await a decision by the Airport Authority regarding her right to record the interview.

Instead, the following day, Chief Chad Beasley informed Sergeant Small by letter that she would be placed on unpaid administrative leave and that she was charged with conduct unbecoming and insubordination for failure to complete the FFDE. In a letter dated June 22, 2012, Dr. Alex informed the Airport Authority that she did not complete Sergeant Small's FFDE because of the disagreement over recording the clinical interview. On June 28, 2012, the Airport Authority conducted an administrative hearing regarding Sergeant Small's perceived noncompliance with the FFDE process. In a letter dated July 3, 2012, Chief Beasley informed Sergeant Small that because she "chose not to participate in the interview, thereby not cooperating in the FFDE," the Airport Authority was terminating her employment, effective that same day. On July 5, 2012, Sergeant Small appealed the Airport Authority's decision to the City of Memphis Civil Service Commission ("CSC" or "the Commission").

The hearing before the Commission took place on February 7, 2013, March 27, 2013, and April 26, 2013. On May 2, 2014, the Commission issued findings of fact and conclusions of law sustaining the termination of Sergeant Small's employment. As is relevant to this appeal, the Commission found that "Ms. Small was scheduled to complete the oral examination portion of the fitness for duty examination on June 20, 2012," that "Dr. Alex did not permit Ms. Small to record the oral examination," and that "Ms. Small never completed the oral examination with Dr. Alex due to a disagreement over whether or not Ms. Small could record the examination." The Commission concluded that

> [F]rom a preponderance of the evidence, that although Ms. Small was not told explicitly by [the Airport Authority] that she had to take the fitness for duty evaluation under the parameters prescribed by Dr. Lisa Alex or face

disciplinary action, Ms. Small's insistence on tape recording the evaluation was noncompliant.

The Commission also concluded that "Ms. Small was insubordinate when she failed to complete the fitness for duty evaluation."

On May 13, 2014, Sergeant Small filed a petition for judicial review of the Commission's decision in the Chancery Court of Shelby County. The trial court heard Sergeant Small's petition on March 23, 2015. On April 30, 2015, the trial court issued its initial findings of fact and conclusions of law, and on May 15, 2015, issued Amended Findings of Fact and Conclusions of Law. The trial court made the following relevant findings:

> 7. There was no deadline imposed by [the Airport Authority] for Sgt. Small to complete the FFDE.
>
> 8. [The Airport Authority]'s General Counsel, Brian Kuhn, and Sgt. Small's counsel, David Sullivan, exchanged several letters relating to the FFDE. In the General Counsel's letter dated June 4, 2012 he stated that Sgt. Small "most assuredly may exercise any and all rights she has under the [Americans with Disabilities Act] or any law during this process and at all other times. [The Airport Authority] would not say that any employee could not exercise any right that they have under any law." The General Counsel, in a subsequent letter dated June 12, 2012, stated '[w]e are not directing Sgt. Small to wave (sic) any legal rights" during the FFDE.
>
> 9. [The Airport Authority] did not warn Sgt. Small that she had to submit to the psychologist's conditions during the FFDE or face disciplinary action.
>
> ***
>
> 11. Sgt. Small appeared early for each scheduled appointment. The first part of the FFDE consisted of written tests that she completed on June 13, 2012.
>
> ***
>
> 14. Sgt. Small was participating in the FFDE process when the psychologist refused to proceed with the interview.
>
> 15. Sgt. Small, on advice of her counsel, wanted to audio record the interview because (1) she did not want anything she told the psychologist to be misstated or misconstrued; (2) she claimed that she had previously been disciplined for

saying something she did not say and using a tone of voice she did not use; (3) she wanted to assure that her demeanor could not be misconstrued or misstated; (4) a recording was needed to allow a third party to review the psychologist's findings; and (5) her attorney advised her to do so.

16. Sgt. Small had no advance reason to think the psychologist would object to having the interview recorded.

17. The psychologist put the interview on hold, while she contacted [The Airport Authority].

18. According to the psychologist, Sgt. Small was polite, respectful and her affect was appropriate.
19. [The Airport Authority] made no effort to resolve the impasse about recording the interview.

20. [The Airport Authority] has no policy that prohibits employees from recording the interview during a FFDE.

21. The Court was never provided any evidence of a professional standard, guideline, ethical principle or opinion applicable to psychologists that prohibits an examinee like Sgt. Small from recording the interview portion of the FFDE or that requires the psychologist to refuse to conduct the interview if it is needed.

22. The record shows that Sgt. Small was not insubordinate, non-compliant or uncooperative by attempting to record the interview.

23. The psychologist failed to conduct the interview causing the FFDE to be uncompleted.

*** 

29. The Civil Service Commission did not find that Sgt. Small violated any [Airport Authority] rules. The Commission concluded that Sgt. Small was insubordinate because she failed to complete the evaluation, even though it found she had never been told she had to comply with the psychologist's conditions during the evaluation or be subject to discipline.

The trial court also made the following relevant conclusions of law:

> 39. The Commission's decisions must be reversed because there is no substantial and material evidence in light of the entire record that Sgt. Small violated [the Airport Authority's] rules or was insubordinate to her superiors.
>
> 40. It is lawful pursuant to Tenn. Code Ann. § 39-13-601(5) for Sgt. Small to record her communications with the psychologist. There was no documented evidence that the psychologist was bound by any professional or ethical standard to refuse to conduct the interview if it was recorded by Sgt. Small.
>
> ***
>
> 42. [T]he evidence is such that a reasonable person would necessarily conclude the psychologist refused to conduct the FFDE after Sgt. Small reasonably exercised her lawful right to make an audio recording. Based on the evidence, no reasonable person would conclude Sgt. Small was insubordinate.
>
> 43. There was no substantial and material evidence in light of the entire record that termination of Sgt. Small's employment was reasonable.
>
> 44. The Decision affirming the termination of Sgt. Small's employment because she attempted to exercise her legal rights during the FFDE process is arbitrary.

On May 19, 2015, the trial court entered an order reversing the decision of the Commission and reinstating Sergeant Small. On May 29, 2015, the Airport Authority filed a motion to stay enforcement of the trial court's judgment. That same day, the Airport Authority filed its notice of appeal. On June 16, 2015, the trial court entered an order denying the Airport Authority's motion for stay of the judgment. On October 29, 2015, five months after the Airport Authority filed its notice of appeal, Sergeant Small filed a motion for pre-judgment interest on the back pay award. On November 5, 2015, the trial court denied Sergeant Small's motion for pre-judgment interest.

## II. Issues

On appeal, the Airport Authority raises multiple issues. However, we conclude that the Authority is merely raising different arguments in support of one issue. The dispositive issue raised is whether the trial court erred when it reversed the decision of the Commission to uphold the Airport Authority's termination of Sergeant Small's employment. Sergeant Small raises one issue on appeal: whether the trial court abused its discretion when it did not grant her request for pre-judgment interest on the back pay award.

## III. Standard of Review

Judicial review of the CSC's decision is governed by the Uniform Administrative Procedures Act. Tenn. Code Ann. § 27-9-114; *City of Memphis v. Civil Serv. Comm'n of Memphis*, 238 S.W.3d 238, 242 (Tenn. Ct. App. 2007). The Uniform Administrative Procedures Act provides, in pertinent part:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of the of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.
>
> (i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

Tenn. Code Ann. § 4-5-322. Although this appeal is taken from the trial court's order, we review the Commission's decision relative to the administrative record and not the trial court's order. *See Id.* § 4-5-322(h); *Wilson v. City of Memphis*, No. W2014-01822-COA-R3-CV, 2015 WL 4198769, at *11 (Tenn. Ct. App. Jul. 13, 2015).

## IV. Analysis

## A. Substantial and Material Evidence

Appellant argues that the trial court erred when it concluded there was no substantial and material evidence to support the Commission's decision. Specifically, Appellant argues that the record reveals an "escalating pattern of insubordination" by Sergeant Small that forms a reasonable basis for the Commission's decision. Appellant also argues that there is substantial and material evidence in the record that Sergeant Small refused to follow a direct order requiring her to complete the FFDE, and, therefore, she acted in an insubordinate manner. Appellee contends that there is no evidence in the record to support the Commission's finding that she failed to follow the order to obtain an FFDE. Appellee also contends that Appellant's discussion of events leading up to the suspension is irrelevant because the Commission's conclusion that appellee was insubordinate was based solely on its finding that she failed to complete the FFDE.

A trial court conducting a review of an administrative decision may modify or reverse the decision if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Code Ann. § 4-5-322(h)(4). "A decision unsupported by substantial and material evidence is arbitrary and capricious." *City of Memphis v. Civil Service Comm'n of City of Memphis*, 238 S.W.3d 238, 243 (Tenn. 2007) (citing *City of Memphis v. Civil Service Comm'n of City of Memphis*, 216 S.W.3d 311, 315 (Tenn. 2007)). "Substantial and material evidence is 'such relevant evidence as a reasonable mind might accept to support a rational conclusion' and to furnish a reasonably sound basis for the decision under consideration." *Id.* (quoting *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d at 316).

With these principles in mind, we first address Appellant's argument that the record shows a pattern of insubordination that supports the Commission's decision to uphold the termination of Sergeant Small's employment. At the outset, we note that the only event cited in the Notice of Charge by the Airport Authority's was Sergeant Small's alleged noncompliance with the order to undergo a fitness for duty assessment. At the time the Airport Authority terminated Sergeant Small's employment, she had already received a nine-day suspension for the incident that occurred on May 3, 2012. Accordingly, Appellee contends that her behavior prior to the order to undergo an FFDE should not have any bearing on this case because the only ground stated for the termination of her employment was noncompliance with the order to undergo an FFDE. Because the only conduct at issue was Appellee's noncompliance with the order to undergo an FFDE, Appellee contends that no "escalating pattern of insubordination" could serve as a reasonable basis for the Commission to uphold the Airport Authority's decision to terminate her employment. Indeed, our review of the Commission's written decision supports Appellee's argument that the sole basis for the Commission's conclusion that Sergeant Small was insubordinate was its finding that she failed to complete the fitness for duty evaluation that was ordered by the

- 11 -

Airport Authority. No incident prior to May 3, 2012 was cited by the Commission in its written opinion upholding termination.

Appellant also argues that, pattern of insubordination aside, there is substantial and material evidence to support the finding that Appellee was noncompliant with the Airport Authority's order to undergo an FFDE. In this regard, the Commission found that "[Appellee] never completed the oral examination with Dr. Alex due to a disagreement over whether or not [Appellee] could record the examination." The Commission also found that "Dr. Alex did not permit Ms. Small to record the oral examination." From these findings, the Commission concluded that "Ms. Small did not complete the fitness for duty under the parameters prescribed by Dr. Lisa Alex," and, consequently, "that although Ms. Small was not told explicitly by [the Airport Authority] that she had to take the [FFDE] under the parameters prescribed by Dr. Lisa Alex or face disciplinary action, Ms. Small's insistence on tape recording the evaluation was noncompliant."

A review of the administrative record, however, shows that Sergeant Small actively complied with the process to complete an FFDE as ordered. She was on time for her appointments with both Dr. Wise and Dr. Alex and on June 13, 2012 completed the written part of the FFDE requested by Dr. Alex. Furthermore, at her next appointment on June 20, 2012, Sergeant Small willingly appeared to complete the oral portion of the FFDE. The Commission's decision to uphold the Airport Authority's decision to terminate stems from its finding that Sergeant Small did not complete the FFDE "under the parameters prescribed" by Dr. Alex. This finding alone does not support a finding of fault on Sergeant Small's part in connection with completing the FFDE. The testimony in the administrative record shows that Dr. Alex postponed the oral part of the FFDE until she could resolve with the Airport Authority the issue of whether Sergeant Small would be permitted to record the FFDE. Dr. Alex had not previously performed an FFDE for the Airport Authority and did not know how Appellant would want to proceed in the face of Sergeant Small's request to record the clinical interview. Under these circumstances, it is unreasonable to conclude that Sergeant Small was noncompliant with Dr. Alex's parameters for the FFDE when the record reveals that Dr. Alex was unsure what the exact parameters were for conducting an FFDE for the Airport Authority.

We also note that Sergeant Small was never given a time frame for completion of the FFDE. Because she was not given a deadline by which to complete the FFDE, and because Dr. Alex delayed the FFDE for the Airport Authority to resolve the recording issue, we agree with the trial court that there is not substantial and material evidence in the record to support the Commission's decision that Sergeant Small was noncompliant with the order to complete an FFDE. There is no evidence in the record that Sergeant Small was purposefully delaying the FFDE. Administrative decisions that are not supported by substantial and material evidence are arbitrary and capricious. *City of Memphis v. Civil Service Comm'n of City of*

*Memphis*, 238 S.W.3d 238, 243 (Tenn. 2007). A reviewing court may modify or reverse an administrative decision if it is arbitrary. Tenn. Code Ann. § 4-5-322(h)(4). In this case, we agree with the trial court that the Commission's decision was arbitrary and capricious because it is unsupported by substantial and material evidence.

### B. Right to Record

It is undisputed that Sergeant Small could have lawfully recorded her interview with Dr. Alex without ever informing Dr. Alex that she was recording that phase of the evaluation. Tennessee Code Annotated Section 39-13-601(a)(5) provides in relevant part:

> [i]t is lawful under §§ 39-13-601—39-13-603 and title 40, chapter 6, part 3 for a person not acting under color of law to intercept a wire, oral or electronic communication, where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception, unless the communication is intercept for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the state of Tennessee.

While it is true, as argued by Appellant, that this code section is part of a criminal statute that provides an exception for criminal penalties under the Tennessee Wiretap Act and that Dr. Alex irrespective of this provision could still refuse to conduct the interview, Sergeant Small, nonetheless, had the legal right without Dr. Alex's consent to record her communication with the doctor during the clinical interview. Indeed, on the issue of recording the interview, the Commission's decision did not include a finding that Sergeant Small had no right to record the clinical interview. In its decision, the Commission concluded that "from a preponderance of the evidence that there is no uniform standard within the psychological community whereby patients in a fitness for duty evaluation are permitted to tape record the session." Importantly, Dr. Ray Turner, the Appellant's expert on professional standards for psychologists, testified that an examinee who wants to record the interview is not being "noncompliant" by making such a request. Dr. John Hutson, the Appellee's expert on professional standards for psychologists, testified that he was not aware of any legitimate reason for a psychologist to refuse an examinee's request to record the interview phase of the fitness for duty evaluation.

In refusing to allow Sergeant Small to record the interview, Dr. Alex testified that she relied on the American Psychological Association's Ethics Section 9.04, which states:

> (a) The term test data refers to raw and scaled scores, client/patient responses to test questions or stimuli and psychologists' notes and recordings concerning client/patient statements and behavior during an examination. Those portions

of test materials that include client/patient responses are included in the definition of test data. Pursuant to a client/patient release, psychologists provide test data to the client/patient or other persons identified in the release. Psychologists may refrain from releasing test data to protect a client/patient or others from substantial harm or misuse or misrepresentation of the data or the test, recognizing that in many instances release of confidential information under these circumstances is regulated by law.

(b) In the absence of a client/patient release, psychologists provide test data only as required by law or court order.

This ethical standard does not address the issue of an examinee's right to record a clinical interview, or the psychologist's right to refuse to allow recording. Instead, the provision protects the patient's statements and responses during the interview and places ethical restraints on a psychologist's release of such information to others not identified in the release executed by the examinee. Contrary to the opinion expressed by Dr. Alex, Section 9.04 provides no support for her decision to delay the interview and to seek an administrative decision from the Appellant regarding Sergeant Small's request to record the interview.

Under the facts here, the Commission's decision that Sergeant Small was insubordinate and that she failed to complete the fitness for duty evaluation is simply not supported by the record. Sergeant Small appeared for her interview as instructed, and the Appellant at the time had no policy in effect that prohibited her from recording the clinical interview. The Appellant also never advised Sergeant Small after Dr. Alex delayed the interview that she would not be permitted to exercise her legal right to record the interview with Dr. Alex and would have to proceed with the evaluation without recording the interview. Additionally, Sergeant Small's request to record the interview was consistent with her understanding from Appellant's general counsel's letter of June 4, 2012 in which he stated that she did not have to waive "any legal right" during the fitness for duty evaluation. Under the circumstances here, the Appellant should have responded to Dr. Alex's request for an administrative decision about whether to allow the interview to be recorded, and then advised Sergeant Small whether they considered a request to record the interview to be noncompliant with the order to undergo a fitness for duty evaluation. In any event, we agree with the trial court that there is not substantial and material evidence in the record to support the Commission's decision that Appellee was insubordinate and that she failed to complete the fitness for duty evaluation. In summary, the record shows that Dr. Alex delayed the clinical interview awaiting a decision from Appellant that was never forthcoming.

## C. Substituted Judgment

Appellant contends that the trial court impermissibly substituted its judgment for the Commission's judgment. Specifically, Appellant argues that the trial court's fact finding was

- 14 -

"unnecessary and extensive." Appellant specifically focuses on the trial court's finding that Dr. Alex refused to go forward with the FFDE as compared to the Commission's finding that Sergeant Small never completed the examination with Dr. Alex due to a disagreement over whether or not she could record the examination. Appellant contends that such improper findings by the trial court render the trial court's decision incorrect because it shows that the trial court impermissibly substituted its judgment for that of the Commission. Appellee argues that there is no limit to the findings of fact and conclusions of law that the trial court may make in such matters.

"In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 4-5-322(h)(5)(B). Although courts review an agency's decision with deference, this is "no excuse for judicial inertia." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988). Tennessee Code Annotated Section 4-5-322(j) requires the trial court to reduce its findings of fact and conclusions of law to writing and make them part of the record. "[T]he 'substantial and material evidence standard' in Tenn. Code Ann. § 4-5-322(h)(5) requires a searching and careful inquiry that subjects the agency's decision to close scrutiny." *Id.*; *see also Miller v. Tenn. Bd. of Nursing*, 256 S.W.3d 225, 229 (Tenn. Ct. App. 2007); *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001); *Willamette Industries, Inc. v. Tenn. Assessment Appeals Comm'n.*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999); *Covenant Health v. Tenn. Health Servs. Dev. Agency*, No. M2014-02538-COA-R3-CV, 2016 WL 1559508, at 9 (Tenn. Ct. App. April 14, 2016). "Courts may reject an administrative agency's factual findings only if a reasonable person would necessarily draw a different conclusion from the record." *Martin*, 78 S.W.3d at 276.

Appellant relies on *Hutchinson v. Board of Admin. of Retirement System of County of Shelby*, 1987 WL 11291 (Tenn. Ct. App. May 26, 1987) to support its position that the trial court's judgment must be overturned because it engaged in impermissible fact finding. In *Hutchinson*, this Court reviewed the decision of a trial court to overturn a decision of the Shelby County Retirement Board. *Hutchinson*, 1987 WL 11291, at *1. The *Hutchinson* Court concluded that "[a]lthough stating the decision was arbitrary and unsupported by material evidence, the trial court…impermissibly substituted its judgment for that of the Board." *Id.* at *2. After concluding that the trial court impermissibly substituted its judgment for the retirement board's judgment, the *Hutchinson* Court analyzed the administrative record and determined that there was material evidence in the record to support the board's decision and reversed the judgment of the trial court. *Id.* at *3.

Appellant argues that, under *Hutchinson*, this Court should overturn the trial court here because it impermissibly substituted its judgment for that of the administrative body.

This argument, however, mischaracterizes the **Hutchinson** case. The **Hutchinson** Court overturned the trial court because, contrary to the trial court's finding, there was material evidence to support the retirement board's decision. **Id.** at *3. Thus, even if we were to conclude that the trial court substituted its judgment for that of the Commission, to affirm the Commission's decision we would have to find that there is substantial and material evidence in the record to support its decision. For all the reasons discussed *supra*, we have already concluded that the Commission's decision was not support by substantial and material evidence. Accordingly, we do not reverse the trial court's judgment.

## D. Other Arguments

Appellant raises several other arguments asserting errors on the part of the trial court, including that the trial court erred when it ruled that the Commission exceeded its jurisdiction by determining that the referral of Sergeant Small for an FFDE was reasonable and that the trial court erred when it concluded that the Commission's decision required reversal because of evidentiary rulings in the Appellant's favor. From our review, we previously concluded that under the facts here the Commission's decision is not supported by substantial and material evidence. Accordingly, we need not address the Appellant's other arguments, and these other issues raised by Appellant are pretermitted.

## E. Pre-Judgment Interest

Sergeant Small raises the issue of whether the trial court erred in denying her prejudgment interest. We note, however, that Appellee's motion for prejudgment interest was filed on October 22, 2015. The notice of appeal in this case was filed on May 29, 2015. "In general, under Rule 4 of the Tennessee Rules of Appellate Procedure, the jurisdiction of the appellate court attaches with the filing of a notice of appeal and, once an appeal has been filed, 'the trial court effectively loses its authority to act in the case without leave of the appellate court.'" **Holladay v. Speed**, 208 S.W.3d 408, 414 (Tenn. Ct. App. 2005) (quoting **First Am. Trust Co. v. Franklin-Murray Dev. Co.**, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001)). In other words, the trial court lost subject matter jurisdiction over this case when Appellant filed its notice of appeal. "Judgments or orders entered by courts without subject matter jurisdiction are void." **First Am. Trust Co.**, 59 S.W.3d at 141. Accordingly, after the notice of appeal was filed, the trial court did not have jurisdiction to adjudicate Appellee's motion for prejudgment interest. The trial court's order on Appellee's motion is a nullity. In effect, Appellee never raised the issue of pre-judgment interest before the trial court. "It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." **Powell v. Cmty. Health Sys., Inc.**, 312 S.W.3d 496, 511 (Tenn. 2010). This issue is, therefore, waived.

## V. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are taxed to the Appellant, the Memphis-Shelby County Airport Authority, and its surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE