IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 19, 2018 Session

## STEPHEN P. GELLER v. HENRY COUNTY BOARD OF EDUCATION

**Appeal from the Chancery Court for Henry County**
**No. 22822     Carma Dennis McGee, Chancellor**

_____

### No. W2017-01678-COA-R3-CV

_____

A tenured teacher serving as an assistant principal was transferred to teach at an alternative school after the local director of schools learned that the teacher did not hold an administrator's license. On appeal, the teacher asserts that the transfer was arbitrary and capricious where the director of schools did not comply with the law concerning when assistant principals are required to hold administrator's licenses. Following a trial, the trial court dismissed the teacher's complaint, ruling that the director of school's belief that the teacher was required to hold an administrator's license was reasonable. We conclude that the director of schools' actions and beliefs were not reasonable under the circumstances; as such, we reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and BRANDON O. GIBSON, J., joined.

Richard L. Colbert and Nina M. Eiler, Nashville, Tennessee, for the appellant, Stephen P. Geller.

Jennifer Craig and Christopher C. Hayden, Jackson, Tennessee, for the appellee, Henry County Board of Education.

### OPINION

### Background

On October 6, 2014, Plaintiff/Appellant Stephen P. Geller filed a complaint against Defendant/Appellee Henry County Board of Education ("the Board"), asserting

violations of the Teacher Tenure Act. According to the complaint, Mr. Geller was illegally transferred from his position as Assistant Principal at Henry County High School ("the high school") to a lower-paid teaching position at the local alternative school by then-director of schools Sam Miles. The complaint sought reinstatement, back pay, and benefits.[1] The matter was tried on May 31 and June 1, 2017.[2]

Mr. Geller began his career as a teacher in 1990 and eventually obtained licenses to teach English, History, Government, Economics, and Sociology; Mr. Geller was highly qualified to teach all of his licensed subjects other than Sociology. In 2006, Mr. Geller was promoted to Assistant Principal at the high school. At the time of the promotion, Mr. Geller testified that neither state law, nor the then-director of schools required Mr. Geller to obtain an administrator's license. Mr. Geller was required, however, to complete his Master's Degree in Education, which he obtained in 2008. At no time did Mr. Geller ever obtain any administrator's license. According to all evaluations and testimony, including from high school principal Lennies McFerren, Mr. Geller performed admirably as Assistant Principal.[3]

In 2010, Director Miles assumed the position of director of schools. During this time, Mr. Geller served as the chief negotiator for the Henry County Education Association, which had a collective bargaining agreement with the Board. Indeed, from 2010 to 2012, Mr. Geller was the president of the Henry County Education Association. As such, where issues arose related to the collective bargaining agreement, Mr. Geller was the individual tasked with addressing these issues with Director Miles.

Mr. Geller testified that in the spring of 2012, Mr. Geller and Tim Mason, another Assistant Principal at the high school, attended a state-sponsored academy for administrators. At the conclusion of the conference, each attendee was asked to fill out forms intended to advance each participant's administrator's license from a beginner license to a professional license. Through inadvertence, Mr. Geller testified that he filled out the form although he had no administrator's license to advance. In response to the mistaken request to advance his license, in June 2012, Dr. Kenneth Nye, Research and License Specialist in the Office of Teacher Licensing for the Tennessee Department of Education, sent a letter to Mr. Geller and Director Miles informing them that Mr. Geller had no administrator's license to advance. The letter indicated that state licensing requirements had changed in 2009 and that all Assistant Principals that were spending

---

[1] A previous case had been dismissed in federal court after the court granted summary judgment on Geller's age discrimination complaint and declined to exercise jurisdiction over the remaining state law claim.

[2] At the start of trial, the trial court denied the Board's motion to exclude any award of back pay should Mr. Geller prevail. The trial court later memorialized its denial of this motion in its final order and noted that all pending claims had been adjudicated. The Board did not designate the trial court's denial of the motion in limine as an issue on appeal.

[3] Specifically, the evidence showed that Mr. Geller had received the highest evaluation score permitted.

more than 50% of their time in "instructional leadership" were now required to be licensed.

Director Miles and Mr. Geller met to discuss the letter on June 28, 2012. According to Mr. Geller, because he spent less than 50% of his time in instructional leadership, no administrator's license was required. Nevertheless, Mr. Geller testified that he would have acquiesced to any request to obtain the licensure in the following year, while still maintaining his position. Instead, he testified that Director Miles required that he obtain the licensure by the start of the school year, a practical impossibility.

According to Director Miles, however, Mr. Geller refused to even attempt to gain the license, instead insisting that such a license was not required. Director Miles testified that while specifics were not discussed, the clear import of the conversation was that Mr. Geller would be allowed to remain in his current position were he to inform Director Miles that he was "working toward his licensure to keep his position."[4] Director Miles admitted, however, that he undertook no investigation to determine whether Mr. Geller was actually spending more than 50% of his time in instructional leadership. Rather, Director Miles testified that he wanted all of his administrators to have the proper licensure and that Mr. Geller was the only Assistant Principal both in the district and in Director Miles's career not to have such a license. As such, Director Miles determined that transfer to a non-administrative position was necessary. Although other teaching positions were open for which Mr. Geller was qualified, Director Miles testified that he placed Mr. Geller at the alternative school because of his understanding that Mr. Geller did not want to return to traditional classroom instruction after being out of the classroom for a number of years.

Much of the testimony at trial concerned whether Mr. Geller was engaged in instructional leadership responsibilities for more than 50% of his time. Mr. Geller, along with Principal McFerren, both testified that Mr. Geller was not spending more than 50% of his time in instructional leadership. Specifically, Mr. Geller testified that he spent more than two hours per day supervising lunch, which neither he nor Principal McFerren considered instructional leadership. Other tasks, such as disciplining students, walking the halls, supervising maintenance on the building and grounds, organizing safety drills, and performing "bus duty" were also characterized as non-instructional by Mr. Geller. Mr. Geller admitted, however, that he did have some tasks that involved instructional leadership, including developing topics for an "advisor-advisee" program and attending teacher meetings where curriculum was determined. Mr. Geller further admitted that in his final year as Assistant Principal, he had stopped performing much of the discipline required by his position previously and had begun participating more fully in teacher evaluations, which could occasionally take up nearly 40% of his day. Mr. Mason, the

---

[4] During cross-examination, however, Director Miles agreed that "if Mr. Geller's recollection is you asked him if he could have his license by the start of school, you really don't have any basis to dispute that then, do you?"

high school's other Assistant Principal, testified that after this change, Mr. Geller's role was more of the instructional-based Assistant Principal, than a supervisory-based Assistant Principal. Another school administrator testified to her understanding that generally every task performed by an Assistant Principal involves instructional leadership.

Other testimony focused on Director Miles's decision to place Mr. Geller at the alternative school as well as the procedure used to replace Mr. Geller. Following Mr. Geller's transfer, a teacher was promoted to Assistant Principal; the teacher already possessed an administrator's license. There was some dispute as to whether the position was actually posted publicly; testimony showed, however, that multiple candidates were interviewed for the position. When the new Assistant Principal left the following year, the job was publicly posted. The post indicated that the Assistant Principal was required to either possess an administrator's license or have a plan to obtain one within the year following hiring. According to the testimony, however, there was a preference for those candidates that had already obtained the license and unlicensed candidates would only be considered in the absence of an appropriate licensed candidate.

The trial court entered an order on July 27, 2017, ruling in favor of the Board. Specifically, the trial court found that the sole reason for the transfer was Mr. Geller's failure to hold an administrator's license and the transfer on this basis was not arbitrary, capricious, or based on an improper motive. With regard to the necessity of transfer, the trial court made the following conclusions:

> The Court finds that [Director] Miles believed that the transfer of [Mr. Geller] from his position as [] Assistant Principal was necessary to the efficient operation of the school system. Although [Mr. Geller] was a highly-qualified teacher in at least two subjects, he did not possess any type of administrator's license. The Court finds that Director Miles believed that [Mr. Geller] was required to hold an administrator's license, and that [Mr. Geller's] failure to do so prohibited him from continuing as Assistant Principal. The Court finds that [Mr. Geller's] failure to hold an administrator's license was the sole reason for his transfer.
>
> [Mr. Geller] relies on the "50% rule" as a justification for never obtaining an administrator's license. Said rule requires that any administrator who spends more than 50% of his or her time in instructional leadership hold an administrator's license. The term "instructional leadership" is not specifically defined in any statute or regulation. Several veteran educators testified before this Court and each held their own beliefs as to the meaning of the term. Therefore, it was reasonable for Miles to believe that the term was defined differently than [Mr. Geller], and to believe that a review of [Mr. Geller's] specific daily activities was not necessary to determine whether the "50% rule" affected his licensure

requirement. Several educators who testified believed that everything within the duties of an assistant principal encompassed "instructional leadership." Without specific statutory or regulatory definition, their belief is reasonable. Further, the fact that [Mr. Geller's] performance evaluations were excellent did not cure the fact that he was not licensed as an administrator.

Mr. Geller thereafter appealed.

## Issues Presented

Mr. Geller raises three issues in this appeal. In our review, we conclude that this appeal involves a single issue: Whether the trial court erred in ruling that Mr. Geller's transfer complied with all applicable law.

## Discussion

The dispute in this case involves whether Mr. Geller, a tenured teacher, was properly transferred from his position as Assistant Principal of the high school to a non-administrative position at the alternative school. The Teacher Tenure Act "does not guarantee continuity of employment in a particular assignment or school." *Van Hooser v. Warren Cty. Bd. of Educ.*, 807 S.W.2d 230, 240 (Tenn. 1991). Rather, the director of schools has the authority to transfer teachers within the school system:

> The director of schools, when necessary to the efficient operation of the school system, may transfer a teacher from one location to another within the school system, or from one type of work to another for which the teacher is qualified and licensed; provided, that transfers shall be acted upon in accordance with board policy.

Tenn. Code Ann. § 49-5-510. Regardless of the fact that the transfer involved a move that Mr. Geller considers to be a demotion, we apply the above framework involving transfers of tenured teachers. *See White v. Banks*, 614 S.W.2d 331, 334 (Tenn. 1981) ("[A] shift from principal to teacher. . . is to be viewed just as a transfer of a teacher from one type of work to another; it is governed by the transfer provision.").

The Tennessee Supreme Court explained the transfer provision as follows:

> As stated, a director of schools has the statutory power to transfer teachers within the local system. Tenn. Code Ann. § 49-5-510 (2002). "When so made, it need not necessarily be preceded . . . by formal written notice and a hearing, so long as it is made in good faith, in accordance with the criterion set forth in the statute—efficient operation of the school system." *McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d 527, 534 (Tenn. 1978); *see also State ex rel. Pemberton v. Wilson*, 481 S.W.2d 760, 770 (Tenn. 1972). If a transfer is not made in good faith and is the product

of arbitrary, capricious, or improper conduct, a tenured teacher is entitled to present a direct legal challenge in the courts. *McKenna*, 574 S.W.2d at 534; *Mitchell v. Garrett*, 510 S.W.2d 894, 898 (Tenn. 1974). Judicial review is limited to determining "whether or not a transfer was made in accordance with the statutory requirements . . . . and must be conducted in light of the broad discretion which the statutes clearly give." *McKenna*, 574 S.W.2d at 534 (referencing Tenn. Code Ann. § 49-1411).

*Lawrence Cty. Educ. Ass'n v. Lawrence Cty. Bd. of Educ.*, 244 S.W.3d 302, 314 (Tenn. 2007) (footnote omitted) (noting that section 49-1411 was later renumbered to section 49-5-510). Thus, section 49-5-510 sets forth three requirements for the transfer of a tenured teacher: (1) the transfer must be made in good faith and not in an arbitrary and capricious manner; (2) the transfer must be made in order to further the efficient operation of the school system; and (3) the transfer "shall be acted upon in accordance with board policy." *Franklin Cty. Bd. Of Educ. v. Crabtree*, 337 S.W.3d 808, 814 (Tenn. Ct. App. 2010) ("A director of school's decision to transfer a teacher must be 'made in good faith, in accordance with the criterion set forth in the statute—efficient operation of the school system.'" (quoting *Lawrence County*, 244 S.W.3d at 314)). In determining whether the decision was arbitrary and capricious, we are guided by the following: "A decision is arbitrary or capricious if it 'is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.'" *Smith v. White*, 538 S.W.3d 1, 11 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. 2017) (quoting *City of Memphis v. Civil Serv. Comm'n of City of Memphis*, 238 S.W.3d 238, 243 (Tenn. Ct. App. 2007)).

We must be cognizant, however, that the director's decision "is afforded a presumption of good faith, and the party challenging the decision carries the burden to establish, by a preponderance of the evidence, that the decision was arbitrary, capricious or 'improperly motivated.'" *Id.* (quoting *Lawrence County*, 244 S.W.3d at 315). "The determinative question is whether the transfer could be classified as for the 'efficient operation of the school system.'" *Lawrence County*, 244 S.W.3d at 315 (quoting Tenn. Code Ann. § 49-5-510). "If valid programmatic grounds exist that will justify finding that a challenged transfer was 'necessary for the efficient operation of the school system,' the reviewing courts should not invalidate the transfer because the evidence also suggests that some of the local officials who made the decision might have had ulterior motives." *Springer v. Williamson Cty. Bd. of Educ.*, 906 S.W.2d 924, 926 (Tenn. Ct. App. 1995) (quoting Tenn. Code Ann. § 49-5-510). "[T]he controlling question in cases of this sort is whether the local education officials had sufficient, demonstrable grounds upon which to base their decision that a transfer was necessary for the efficient operation of the school system." *Id.*

As an initial matter, the trial court here specifically found that Mr. Geller's "failure to hold an administrator's license was the sole reason for his transfer." On

appeal, neither party generally disputes this finding. Rather, Mr. Geller raises several arguments regarding whether the transfer complied with section 49-5-510. Specifically, Mr. Geller asserts that several board policies were violated by the transfer, that the transfer was not made in good faith, and that the transfer was not necessary for the efficient operation of the school system.

We begin with a discussion of the Board policies allegedly violated. First, Mr. Geller contends that the transfer violated Board Policy 5.115, which states that the director of schools "shall" assign personnel by May 15 for licensed personnel or June 15 for non-licensed personnel. The policy further provides that when an employee is transferred to a different school, the employee is entitled to written notice prior to the transfer. There can be no dispute that this policy was not followed with regard to the transfer at issue. Here, the first notice Mr. Geller had that he would be teaching at the alternative school was on July 27th.

Mr. Geller also asserts that certain state and local policies were violated when Director Miles transferred Mr. Geller without reference to his evaluation scores. Pursuant to Tennessee State Board of Education Policy 5.201, local boards of education were required to develop or adopt evaluation models for students. In accordance with that state-wide policy, Board Policy 5.109 provides that "[t]he Board shall use a state-approved model for evaluating administrative and supervisory personnel and shall approve standard forms to be used in evaluating support personnel." Finally, Tennessee Code Annotated section 49-1-302 provides that "The evaluations shall be a factor in employment decisions, including, but not necessarily limited to, promotion, retention, termination, compensation and the attainment of tenure status; however, nothing in this subdivision (d)(2)(A) shall require a[] [local education agency] to use student achievement data based on state assessments as the sole factor in employment decisions." Tenn. Code Ann. § 49-1-302(d)(2)(A). Here, Director Miles admitted that he simply did not consider Mr. Geller's evaluations, though stellar, in his decision to transfer Mr. Geller from his Assistant Principal position.

In order to excuse these alleged violations of Board Policy, the Board contends that the policies were not applicable in the present situation. With regard to the timing of the transfer, the Board contends that the transfer was performed in a timely manner notwithstanding its late date because Director Miles only learned that Mr. Geller did not possess an administrator's license at the end of June 2012. Only after Dr. Nye's letter, the Board argues, was Director Miles "forced to rescind his original assignment and reassign [Mr. Geller] to a non-administrative position in compliance with [Director] Miles' understanding of state law and state and local board policy." Likewise, with regard to the evaluations, the Board argues that the "evaluations are irrelevant if an individual is not properly licensed for a position." Thus, as we perceive it, the Board's arguments with regard to both policies amount to a contention that the transfer was appropriate notwithstanding the technical violations of the policies due to the fact that Mr. Geller

simply could not remain in the Assistant Principal position without an administrator's license.

Thus, we return to the central dispute in this case: whether the law required Mr. Geller to hold an administrator's license. The trial court, however, declined to specifically find that Mr. Geller was required to hold such a license. Rather, the trial court ruled that Director Miles reasonably believed that Mr. Geller was required to hold an administrator's license based upon his interpretation of state law. Mr. Geller asserts, however, that Director Miles's interpretation of the law was not reasonable and that relying on such a mistaken interpretation of the law is insufficient to show that the transfer was made in good faith and necessary for the efficient operation of the school system.

Consequently, we next consider the law in Tennessee governing teacher licensure. Tennessee Code Annotated section 49-1-302 authorizes the State Board of Education to adopt policies governing the "qualifications, requirements and standards of and provide the licenses and certificates for all public school teachers, principals, assistant principals, supervisors and directors of schools[.]" Tenn. Code Ann. § 49-1-302(a)(5)(A). Pursuant to this authority, the State Board of Education adopted Rule and Regulation 0520-02-03-.03, which provides that "[a]ssistant principals, teaching principals, or dual assignment personnel with more than fifty percent (50%) of their responsibilities involved in instructional leadership must be properly licensed." Tenn. Comp. R. & Regs. 0520-02-03-.03(5). Both parties expended considerable effort, both during trial and on appeal, as to whether Mr. Geller was engaging in a majority of instructional leadership so as to trigger the licensure requirement of Rule and Regulation 0520-02-03-.03(5). As such, the trial court's order focuses on Director Miles's good faith understanding of whether the state's licensing requirement had been triggered.

On appeal, however, it appears that the Board may desire to take a different tactic—instead contending that Mr. Geller was required to obtain the license regardless of whether he was engaging in instructional leadership duties. Although the Board largely focuses on the "50% Rule" as the trial court characterized Rule and Regulation 0520-02-03-.03(5), the Board also argues that it complied with local Board Policy 5.102, which the Board contends requires that all administrative positions be filled by individuals with both professional teaching certifications and an administrative or supervisory certification. We cannot agree. Even assuming *arguendo* that Board Policy may place an additional burden on Assistant Principals that is not required by Rule and Regulation 0520-02-03-.03(5), we cannot conclude that Policy 5.102 actually imposes an additional burden. The policy at issue states, in relevant part:

> All administrative and supervisory positions in the school system are established initially by the Board, by state law, or State Board Rule, Regulations, and Minimum Standards.

> To be considered for certificated administrative or supervisory positions, the applicant must show the following qualifications:
>
> 1. Professional teaching certification; and
>
> 2. Administrative or supervisory certification and experience in accordance with state law and State Board Rules and Regulations in the appropriate area based on the minimum of a master's degree.

Thus, Policy 5.102 makes clear that licensing or certification requirements for administrative positions are to be "in accordance with state law." State law, however, requires an Assistant Principal to hold an administrator's license only where the individual's tasks include more instructional leadership than other tasks. Thus, the determination of whether Mr. Geller was required by state law to hold an administrator's license must be determined through the lens of Rule and Regulation 0520-02-03-.03(5).[5]

Still, the Board argues that the propriety of the transfer in this case is not determined wholly on whether Mr. Geller was spending the majority of his time on instructional leadership duties, but on whether Director Miles acted in good faith or in a manner that was not arbitrary or capricious in removing Mr. Geller from his administrative position. *See **Lawrence Cty.***, 244 S.W.3d at 314. In support, the Board asserts that Director "Miles believed that he had no choice but to transfer the Plaintiff in compliance with Tenn. Code Ann. § 49-5-510's requirement that transfers be made into positions 'for which the teacher is qualified and licensed' based upon a correct or, in the alternative, reasonable and good faith belief that Mr. Geller required an administrative license to continue in his position." In support, the Board cites the testimony of various witnesses who could not agree on the definition of instructional leadership nor agree as to what percentage of Mr. Geller's work involved instructional leadership duties.

While we agree that the central determination in this case involves the propriety of Director Miles's decision in light of his broad discretion, we cannot agree that Director Miles exercised his discretion in accordance with the criterion established by section 49-5-510 in this particular case. First, although Director Miles testified at trial that he believed that all administrators were required to hold licenses, we cannot agree that such a belief was reasonable or determinative. Here, the applicable law simply does not require that all Assistant Principals are required to hold administrator's licenses. Instead, the law unambiguously states that only those Assistant Principals that spend the majority of their time in instructional leadership must be licensed. *See* Tenn. Comp. R. & Regs. 0520-02-03-.03(5). Director Miles was well aware of this law, as it was cited in Dr. Nye's June 2012 letter—the letter that served as the catalyst for all discussion of Mr. Geller's licensure status.[6] To interpret Tennessee law to require that all Assistant

---

[5] The Board cites no other local policy that arguably imposes an additional licensure requirement on assistant principals.

[6] In addition, Mr. Miles testified that, as the director of schools, he was required to have a

Principals hold administrative licenses regardless of their duties would essentially render Rule and Regulation 0520-02-03-.03(5) meaningless. Simply put, this Court is not entitled to adopt such an interpretation. *See **Culbreath v. First Tenn. Bank Nat'l Ass'n***, 44 S.W.3d 518, 524 (Tenn. 2001) ("[W]e must interpret the statute 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.") (quoting ***Cafarelli v. Yancy***, 226 F.3d 492, 499 (6th Cir. 2000)); *see also **Hammond v. Harvey***, 410 S.W.3d 306, 310 (Tenn. 2013) (citing ***Houghton v. Aramark Educ. Res., Inc.***, 90 S.W.3d 676, 679 (Tenn. 2002) ("The[] general principles of statutory construction also apply to administrative regulations and rules."). Thus, while the definition of instructional leadership may be unclear in the law, the law is clear that Assistant Principals may perform duties that do not involve instructional leadership.

Other Tennessee law supports this interpretation. For example, Tennessee Code Annotated section 49-2-303 contains a provision that describes certain tasks as "noninstructional supervision of students." Tenn. Code Ann. § 49-2-303(a)(7)(A). These tasks include lunchroom duty, bus duty, and other related activities. *Id.* Thus, Tennessee law clearly contemplates that some tasks performed in schools are "noninstructional" and therefore do not involve "instructional leadership." As such, to the extent that Director Miles or other witnesses believed that Mr. Geller was required to hold an administrator's license simply by virtue of his position as Assistant Principal without regard to his specific duties, such a belief simply was not reasonable under the law.

Accordingly, a review of Mr. Geller's specific tasks was required to determine the necessity of an administrator's license in his position as Assistant Principal. The undisputed evidence presented at trial showed that following the receipt of Dr. Nye's letter, Director Miles determined that Mr. Geller was required to hold an administrator's license with absolutely no investigation of Mr. Geller's duties.[7] Director Miles testified that when he made the decision to transfer Mr. Geller from his administrative position, he merely assumed but did not know whether Mr. Geller was spending the majority of his time in instructional leadership.[8] Based upon this testimony, the trial court found that Director Miles believed that a review of Mr. Geller's daily activities was simply unnecessary. Clearly, however, a review of an Assistant Principal's duties is necessary to determine whether a license is required under Rule and Regulation 0520-02-03-.03(5). Accordingly, Director Miles "'disregard[ed] the facts and circumstances of the case'" in imposing a licensure requirement on Mr. Geller notwithstanding his particular duties. ***Smith***, 538 S.W.3d at 11 (***City of Memphis***, 238 S.W.3d at 243) (describing such a

___

working understanding of the law related to the schools and the rules of the state and local boards of education.

[7] The duties of an assistant principal are assigned by the school principal, rather than the director of schools. *See* Tenn. Code Ann. § 49-2-303(a)(7)(A).

[8] In fact, it appears that the only evidence before Director Miles at the time he made the decision was Mr. Geller's own statements that the majority of his duties did not include instructional leadership.

- 10 -

disregard as an arbitrary or capricious decision). Without any investigation or understanding of Mr. Geller's daily tasks to show that a license was actually required under the circumstances, it therefore appears that Director Miles's decision to transfer Mr. Geller solely on the basis of his lack of license was arbitrary and capricious. *See Smith*, 538 S.W.3d at 11 (*City of Memphis*, 238 S.W.3d at 243); *Pittman v. City of Memphis*, 360 S.W.3d 382, 389 (Tenn. Ct. App. 2011) (holding that a transfer decision is arbitrary and capricious when it is not supported by substantial and material evidence).

Based on the foregoing, we reverse the trial court's ruling that Mr. Miles was reasonable to assume that a review of the tasks actually performed by Mr. Geller was unnecessary to determine whether an administrator's license was required under Rule and Regulation 0520-02-03-.03(5). In the absence of any attempt to determine whether Mr. Geller was actually spending the majority of his time in instructional leadership, Director Miles lacked "sufficient, demonstrable grounds" for transferring Mr. Geller solely on the basis of his lack of license. *Springer*, 906 S.W.2d at 926. Likewise, because Director Miles had insufficient grounds to conclude that Mr. Geller lacked a **required** license, Director Miles's decision to transfer Mr. Geller without consideration of the timing of transfers or Mr. Geller's stellar evaluations was in violation of Board policy. *See* Tenn. Code Ann. § 49-5-510 (requiring that transfers be acted upon in accordance with board policy). Given the lack of investigation into whether Mr. Geller was required to obtain a license under Rule and Regulation 0520-02-03-.03(5), Director Miles had no substantial and material evidence upon which to conclude that the transfer was "necessary to the efficient operation of the school system." Tenn. Code Ann. § 49-5-510. Under these circumstances, we must conclude that the presumption of good faith has been rebutted and the transfer at issue violated section 49-5-510. As such, the trial court's judgment is reversed.

## Conclusion

The judgment of the Henry County Chancery Court is reversed, and this cause is remanded to the trial court for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellee, Henry County Board of Education, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE