# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 18, 2007 Session

## CITY OF MEMPHIS v. THE CIVIL SERVICE COMMISSION OF THE CITY OF MEMPHIS, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-06-0305-3     D.J. Alissandratos, Chancellor

---

### No. W2006-01880-COA-R3-CV - Filed April 4, 2007

---

This administrative appeal arises out of the termination of Officers  Mauricio Hearns's (Officer Hearns), Henry Gray, Jr.'s (Officer Gray), Dorian Branch's (Officer Branch), and Derick Jones's (Officer Jones) (collectively "the officers") employment with the City of Memphis Police Department (the Department) following their purchases of stolen Samsung televisions and digital video disc (DVD) players for their personal use.  The Department terminated the officers' employment after finding a violation of DR-104 Personal Conduct.  The Civil Service Commission of the City of Memphis (the Commission) ruled that the termination was unreasonable disciplinary action and reversed the City's decision.  The City appealed to Shelby County Chancery Court, where the chancellor reversed the Commission's decision, finding it to be arbitrary and capricious.  We hold that the Commission's decision was unsupported by substantial and material evidence and therefore arbitrary.   We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and HOLLY M. KIRBY, J., joined.

Leigh H. Thomas and Thomas E. Hansom, for the appellants, Mauricio Hearns, Henry Gray, Jr., Dorian Branch and Derick Jones.

Sara L. Hall, City Attorney, and Gerald L. Thornton, Senior Assistant City Attorney, for the appellee, City of Memphis.

## OPINION

This appeal arises out of the termination of Officers Mauricio Hearns's (Officer Hearns), Henry Gray, Jr.'s (Officer Gray), Dorian Branch's (Officer Branch), and Derick Jones's (Officer Jones) (collectively "the officers") employment with the City of Memphis Police Department (the Department) following their purchases of stolen Samsung televisions and digital video disc (DVD) players for their personal use.

On several occasions prior to the instant action, Claude Maurice Spivey (Mr. Spivey) and Robert McEwen (Mr. McEwen), at times accompanied by another co-conspirator, broke into the Samsung warehouse and took a significant amount of equipment, including big screen televisions and DVD players. They entered the warehouse undetected by virtue of their employment with ADT, the security company that provided services for the Samsung warehouse at that time.

When Mr. McEwen contacted Officer Branch to tell him that his friend, Mr. Spivey, had big screen televisions for sale at wholesale prices, Officer Branch said he was interested in purchasing one. Officer Branch knew Mr. McEwen from college and believed him to be a licensed vendor of clothing and shoes. He also knew both men to be employees of ADT and understood that Mr. Spivey had obtained the equipment wholesale through his job there. Officer Branch paid $1,000 in cash for one big screen television and one DVD player. The equipment was delivered to his home at approximately ten o'clock at night. Officer Branch testified that Mr. Spivey had delivered the television and left by the time he arrived at home and met Mr. McEwen. He received no sales receipt and did not think to check the serial number on the television. Mr. McEwen asked Officer Branch if he could leave two of his televisions in the home overnight and stated that he could pick them up after moving into a new apartment the following day. Officer Branch agreed to keep them overnight and testified that neither this request nor the timing of the delivery seemed odd to him.

Officer Branch knew that Officer Hearns had been looking for a big screen television and called to tell him about the opportunity through Messrs. McEwen and Spivey. Officer Hearns then agreed with his roommate, Officer Gray, to split the cost of the television and DVD player: Officer Hearns paid $200, and Officer Gray $800, all in cash. Officer Gray testified that he knew Mr. Spivey worked for ADT and acquired the equipment through his job. Officer Hearns testified that Mr. Spivey delivered the equipment at midnight and set it up before accepting payment. Officer Gray noticed that Mr. Spivey had delivered the equipment on the back of a small pickup truck. Neither officer remembered requesting or receiving a receipt or any other paperwork that evening, nor did they look for a serial number. Moreover, neither officer perceived the manner of delivery or any other aspect of the transaction as suspicious. Officer Hearns testified that he did not suspect Mr. Spivey of illegal activity because he knew that Officer Hearns was a police officer. Moreover, both Officer Gray and Officer Hearns stated they relied on Officer Branch's decision to purchase from Mr. Spivey and, as a result, believed the transaction to be legitimate.

Officer Jones acquired his Samsung television independently of the other officers. He knew Mr. Spivey as the head of security for a nightclub on Beale Street and had become acquainted with him after responding to calls there. Mr. Spivey approached Officer Jones and offered the equipment for $1,000, but Officer Jones declined on account of the high price. He later negotiated a price of $600 for a television only and took delivery of it at eleven o'clock at night from a U-Haul truck. Officer Jones testified that he thought he was purchasing a used television but, upon seeing it was new, asked Mr. Spivey about it. Mr. Spivey told him not to worry, and then Officer Jones paid him. At trial, Officer Jones stated that he never questioned the legality of the transaction because Mr. Spivey knew he was a commissioned police officer.

Shortly thereafter, Mr. McEwen made the mistake of taking a stolen Samsung television to a shop for repair. The owner or employee of the repair shop deduced the television had been stolen and contacted the police. Police officers seized the television and arrested Mr. McEwen. Everything unraveled from there: Mr. Spivey and the other co-conspirator were arrested, and the Auto Cargo Theft Task Force (the Task Force) then learned of the officers' involvement in the matter. After being contacted by the Task Force, Officer Branch surrendered the equipment to authorities and gave a statement. Mr. Spivey could not name Officers Hearn and Gray but identified their apartment where members of the Task Force then entered and confiscated the equipment. Officer Jones saw a newscast on the television about the arrest of those involved in the Samsung warehouse thefts and called his attorney, who urged him to contact the Task Force immediately. He did so and voluntarily surrendered his television to the authorities. When recovered by the Task Force, all of the officers' televisions revealed scratched out (and undetectable) serial numbers. All officers disavowed any knowledge of this fact.

As a result of these events, the Department charged the officers with the violation of Memphis Police Department Rule-104 Personal Conduct (DR-104 Personal Conduct), which provides as follows:

> The conduct of each member, both on and off duty, is expected to be such that it will not reflect adversely on other members, the Department, the City of Memphis, or the law enforcement profession. This regulation applies to both the professional and private conduct of all members. It prohibits any and all conduct which is contrary to the letter and spirit of the departmental policy and procedure which would reflect adversely upon the Department or its members. It includes not only all unlawful acts by members but also acts which, although not unlawful in themselves, would violate the Law Enforcement Code of Ethics, and would degrade or bring disrespect upon the member of the Department.

On April 10, 2002,[1] Deputy Chief A. L. Gray (Chief Gray) conducted a consolidated administrative hearing and ultimately terminated their employment. At the time of termination, Officers Branch and Hearns had been police officers for four (4) years, Officer Jones for three (3) years and two (2) months, and Officer Gray for ten (10) months. They appealed to the Civil Service Commission, which heard the consolidated matter on June 10, 2005 and rendered its decision on December 19, 2005. The Commission unanimously restored the officers' positions with back pay and benefits. The City of Memphis (the City) then filed a petition for a writ of certiorari and supersedeas in Shelby County Chancery Court and presented its case on July 20, 2006. In a written order dated August 15, 2006, incorporating his previous oral ruling, the chancellor granted the relief sought by the City and reversed the Commission's decision, finding it arbitrary and capricious. In the court's opinion, no "reasonably prudent police officer [would] buy a TV from an absolute stranger who works at ADT - - which is a security service, it is not a wholesale outlet, it is not the arm of Samsung, it is not Samsung's outlet store - - and take delivery of that in the dead of night[.]" The chancellor noted that law enforcement officers are and should be held to a higher standard than average citizens with respect to such matters and suggested that the poor judgment exhibited in this case would erode the public confidence in law enforcement. And, in the chancellor's opinion, the undisputed facts rendered the Commission's decision arbitrary and warranted a reversal.

We agree. Upon a thorough review of the record, we find that the City carried its burden in proving a violation of DR-104 Personal Conduct and that the Civil Service Commission's decision regarding the reasonableness of the termination was error.

### *The Issues Presented and the Standard of Review*

We restate the issue presented by the parties on appeal as whether the trial court erred when it reversed the Civil Service Commission's ruling and affirmed the City's decision to terminate the employment of Officers Hearns, Gray, Branch, and Jones. The officers assert that substantial and material evidence supports the Commission's decision and that the chancellor erroneously substituted his own judgment when he reversed the Commission's ruling. The City of Memphis, on the other hand, contends that the trial court's reversal was proper because, in light of the undisputed facts, the Commission's finding that the City had not shown the reasonableness of its action was unsupported by the evidence and was therefore arbitrary.

### *Applicable Standard for the Trial and Appellate Courts*

This is an appeal from the trial court's judgment rendered pursuant to the statutory writ of certiorari as provided in title 27, chapter 9 of the Tennessee Code. *See* Tenn. Code Ann. §§ 27-9-

---

[1]The statements of charges and the hearing summary reflect that the hearing occurred on March 10, 2002, but a careful review of the documents indicates that it occurred instead on April 10, 2002.

101 to -114 (2000). This statutory writ is available following a proceeding conducted before a civil service board that affects a civil servant's employment status. *See* § 27-9-114; *Tidwell v. City of Memphis,* 193 S.W.3d 555, 559 (Tenn. 2006). The application of these provisions requires compliance with the standards of the Uniform Administrative Procedures Act (UAPA), including the judicial standards of review set forth in Tennessee Code Section 4-5-322. Tenn. Code Ann. § 27-9-114(b)(1) (2000). Under the UAPA, administrative agency decisions are subject to chancery court review that is conducted without a jury and is limited to the administrative record. Tenn. Code Ann. § 4-5-322(g) (2005) (providing, however, that review of procedural errors is not limited to the administrative record). Subsection (h) specifies the scope of judicial review as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5) (A) Unsupported by evidence which is both substantial and material in light of the entire record.
>
> (B) In determining the substantiality of evidence, the court shall take into account whatever fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn.Code Ann. § 4-5-322(h) (2005).

Upon confirming that an agency has employed the proper legal principles in the case under review, this Court must then consider the disputed factual findings and address whether the agency had a reasonably sound basis for making those findings. *See McEwen v. Tenn. Dept. of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). Like the trial court, this Court applies the substantial and material evidence standard in reviewing the agency's findings of fact. *Bobbitt v. Shell,* 115 S.W.3d 506, 509–10 (Tenn. Ct. App. 2003). Substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion" and to furnish a reasonably sound basis for the decision under consideration. *City of Memphis v. Civil Serv. Comm'n*, No. W2004-00091-SC-R3-CV, 2007 WL625374, at *6 (Tenn. Mar. 2, 2007)(quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n,* 876 S.W.2d 106, 110–11 (Tenn. Ct. App. 1993)); *Dickson v. City of Memphis Civil Serv. Comm'n*, 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005);

*Pruitt v. City of Memphis,* 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005); *Bobbitt*, 115 S.W.3d at 510.

As directed by the statute, we take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B). When the agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight. *Pruitt*, 2005 WL 2043542, at *7. Moreover, the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result. *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). Rather, we may reject an administrative determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence. *Id.*

Likewise, Tennessee Code Annotated Section 4-5-322(h)(4) permits a reviewing court to modify or reverse an administrative decision if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Code Ann. § 4-5-322(h)(4) (2005). A decision unsupported by substantial and material evidence is arbitrary and capricious. *City of Memphis v. Civil Serv. Comm'n*, No. W2004-00091-SC-R3-CV, 2007 WL625374, at *5 (Tenn. Mar. 2, 2007). Yet, a clear error of judgment can also render a decision arbitrary and capricious notwithstanding adequate evidentiary support. *Id.* at *6. A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* (quoting *Jackson Mobilphone*, 876 S.W.2d at 110–11).

*The Standard of Review for the Civil Service Commission*

Section 246 of the Charter of the City of Memphis provides that "[t]he City may terminate, suspend, or demote an employee for just cause, and the employee shall be given a written notice of the reasons for the action taken." Charter of City of Memphis § 246 (renumbered as section 7 under article 34 by ordinance number 3233, adopted Aug. 31, 1982). Moreover, when an employee appeals to the Civil Service Commission for a review of disciplinary action, section 248 provides that "the burden of proof required to sustain the action of the city shall be by a preponderance of the evidence. If, after a presentation of the proof, the commission finds that there exists a reasonable basis for the disciplinary action taken, the action of the City shall be sustained." Charter of City of Memphis § 248 (renumbered as section 9 under article 34 by ordinance number 3233, adopted Aug. 31, 1982). In this case, the Civil Service Commission was required to determine whether the City had shown, by a preponderance of the evidence, a reasonable basis for its decision to terminate the employment of Officers Hearns, Gray, Branch, and Jones.

## *Analysis*

### *The Questions Before this Court*

In order to prevail in the proceeding before the Civil Service Commission, the City must have shown by a preponderance of the evidence that the officers violated DR-104 and that the violation, in addition to surrounding circumstances, furnished a reasonable basis to terminate their employment. In accordance with Tennessee Code Annotated Section 4-5-322(h), we must determine whether the Commission's decision was arbitrary or capricious or whether it lacked sufficient evidentiary support. We begin by reviewing the City's reasoning for the action taken. Following the administrative hearing, Chief Gray issued a statement setting forth his findings of fact and the basis for termination.

> [The] purchase of 54" televisions without proper paperwork showed poor judgement [sic], if not some degree of knowledge that the televisions were stolen. Each [officer] purchased and received a Samsung 54" television that was a part of stolen merchandise taken from Samsung's Home Entertainment . . . during July 2001. The items purchased were delivered to each [officer] by the party or parties responsible for the burglary without a sales receipt, owner's manual, nor warranty information.

> On 3-14-02, the Shelby County Grand Jury returned indictment[s] against [the officers] for Theft of Property over $1,000.00. Each of you were arrested on 3-18-02 that reflected adversely via the news media (i.e. Commercial Appeal dated Tuesday 4-19-2002) on other members, the Department, the city of Memphis and law enforcement profession.

> A review of each of your disciplinary resumes was made for prior sustained charges. This check showed the following results:

> Officer D. Jones, Personal Conduct with a 10 day suspension on 9-3-01

> Officer M. Hearns, Compliance with Regulations and Personal Conduct on 5-3-00

> PIIP H. Gray, Compliance with Regulations, 3 day suspension; and Personal Conduct, 2 day suspension.

> Officer D. Branch had no prior disciplinary problems.

In conclusion, being law enforcement officers, each of you should have known not to purchase any items that did not have attached serial numbers nor receive proper warranty paperwork, along with a valid sales receipt. The charge on the violation of DR #104 Personal Conduct is hereby sustained on Officer D. Jones, D. Branch, M. Hearns, and PIIP H. Gray.[2]

In sum, the City based its decision to terminate the officers' employment on their purchase of stolen merchandise under suspicious circumstances tending to reflect, at the very least, poor judgment. Specifically, the suspicious circumstances included the manner of delivery, the absence of related paperwork, and the absence of serial numbers on the televisions. Moreover, the City relied upon a newspaper article[3] documenting the officers' indictments and arrests. Aside from the purchases constituting violations of DR-104, the City reviewed and relied upon the officers' individual disciplinary histories.

We next consider the Commission's reasons for reversing the City's action. In a decision issued on December 19, 2005, the Civil Service Commission concluded that the City's disciplinary action was not reasonable even though the officers had exhibited poor judgment. Its reasoning appears to boil down to four factors: the officers' lack of awareness regarding the stolen nature of the merchandise, their remorse for their actions, their cooperation with the Auto Cargo Theft Task Force, and their status as "victims" of the "sellers," Messrs. McEwing and Spivey. The decision suggests that the officers neither knew nor should have known (or suspected) that the televisions were stolen. First, the officers apparently knew the "seller" to be a "licensed vendor" of merchandise or had previously become acquainted with the "seller" through his part-time security job for a nightclub on Beale Street. Second, the Commission noted that it was not uncommon for police officers to receive discounts from businesses and that the sales price for these televisions was not dramatically lower than the retail value at the time. Presumably, some of the officers had comparison-shopped prior to purchasing the televisions and therefore would not have become suspicious of the transaction on this basis. In addition to this lack of awareness, the Commission accorded weight to the officers' apologies at the hearing and to their cooperation with the Auto Cargo Theft Task Force. Finally, the decision cast the officers as "victims" of the "seller" because they never recovered the funds they paid for the stolen merchandise.

The resolution of this case requires that we first consider the disputed facts of this case and evaluate the Commission's findings. After resolving those issues, we then turn to the ultimate issue

[2]We note that, although the findings refer to the complete absence of owner's manuals and warranty information, Officer Branch did produce an owner's manual at the hearing before the Commission. Even so, this discrepancy has no effect on the outcome of this case.

[3]On March 19, 2002, an article entitled "Officers face stolen property charges: 4 charged with buying hot TVs, DVD players" appeared in *The Commercial Appeal* on the second page of section B. Chief Gray's summary identifies an article dated April 19, 2002, but it is clear that the article to which it refers is the one published in March of that year.

of whether the Commission properly found that the City failed to carry its burden in proving the reasonableness of the terminations. Mindful of the UAPA parameters for appellate review, we turn first to the two factual disputes in this case.

*Disputed Fact: The Extent of Discount*

Aside from the ultimate determination of the Commission, the only disputed facts involve the market retail price of the televisions and the officers' subjective awareness of the nature of the merchandise. The officers argued that the price they paid for the equipment was not significantly lower than the retail price for the same or a similar television at that time. For example, they introduced a 2002 Best Buy advertisement and identified a television selling for $1,299 as comparable to the Samsung. They also introduced into evidence a Sam's Club price ticket for a 54-inch Akai set purchased by Officer Branch for $999.98, as well as a Best Buy receipt for the television and DVD player Officer Hearns purchased for $1,472 as replacements for the confiscated equipment. The City, however, contended that the Samsung units were high definition televisions retailing at double the price of the analog sets identified by the officers. Sergeant Leo Hampton (Sergeant Hampton), a veteran officer and member of the Auto Cargo Theft Task Force, investigated the Samsung warehouse thefts and the later sale of the stolen goods to police officers. He testified that the stolen televisions were high definition units and identified a high definition television, retailing at approximately $2,270, on the 2002 Best Buy advertisement as comparable to the Samsung units. Also before the Commission was the Samsung owner's manual accompanying the set purchased by Officer Branch.[4] There is no language in the owner's manual characterizing the Samsung unit as a high definition television. The Commission found that the officers had not purchased the equipment at significantly reduced rates and apparently found Sergeant Hampton's testimony unpersuasive. We duly note that Officers Branch, Hearns, and Gray received a DVD player for "free" with their $1,000 televisions. Moreover, Officer Jones paid only $600 for the Samsung set. Yet, because this finding depends upon a credibility determination and the record presents no compelling evidence to the contrary, we decline to reverse the Commission's finding regarding pricing. Even so, the impropriety of purchasing stolen goods arises whether or not the buyer strikes a good deal. The only relevance of the pricing, as we view it, is whether it was so low as to cause the officers to question the legitimacy of the transaction. We extrapolate from the Commission's finding that the pricing, taken alone, was not sufficient to arouse the officers' suspicions. As we conclude below, however, other, undisputed elements of the transactions would cause the reasonable citizen to inquire further.

---

[4] One reason cited by the City for terminating the officers' employment was that they took delivery of the equipment without sales receipts, owners' manuals, and warranty paperwork. Officer Branch produced an owner's manual at trial and contended that it included his warranty paperwork. A review of the manual does indeed reveal a statement of warranty, but the warranty requires valid proof of purchase. None of the officers received (or demanded) sales receipts.

*Disputed Fact: Whether the Officers Knew or Should Have Suspected*
*the Equipment was Stolen*

The single factor that bears most directly on the reasonableness of the disciplinary action taken against Officers Hearns, Gray, Branch, and Jones is whether the surrounding circumstances should have made them suspicious enough to seek more information before consummating the deal. The Department found that the officers, at a minimum, should have known better than to buy the equipment without more information, yet the Commission, by implication, arrived at the opposite conclusion. The Commission's decision acknowledged poor judgment but underscored the following elements: the officers' knowledge of or relationship with the "seller," the routine award of business discounts to police officers, and the minimal discount actually received by the officers. Although the Commission never explicitly stated that the City failed to prove that the officers knew or should have known the equipment was stolen, its enumeration of the above points strongly suggests this finding.

The Commission noted that the officers knew the "seller" as a licensed vendor of merchandise or had become acquainted with the "seller" through his security job on Beale Street. First, the record reveals that Officer Branch knew Mr. McEwen, his college friend, to be a licensed vendor of clothing and shoes. But he testified that Mr. Spivey, not Mr. McEwen, was the "seller," and the only statements regarding Mr. Spivey involve his ability to get electronic equipment for wholesale prices through his employer, ADT. We do acknowledge that Officer Branch contends he imprudently relied on his college friend and that Officers Hearns and Gray relied on Officer Branch's recommendation. Officer Jones also had come to know Mr. Spivey as the head of security for a Beale Street nightclub. Yet, these points amount to little more than the fact that the Officers did not buy the equipment from complete strangers. And, especially given the surrounding circumstances, these personal connections do not justify a suspension of common sense or absolve even the common citizen from making reasonable inquiries into the legitimacy of the seller's enterprise.

Likewise, the Commission's recognition of the frequent award of business discounts to police officers seems only tangentially relevant to these facts. As Sergeant Hampton succinctly stated, "Best Buys [sic] and all these other companies don't give you a discount out of the back of a truck at midnight." We fail to see how regular discounts given by retail establishments would somehow work to legitimate this arrangement in the mind of a police officer. Finally, because we affirmed the Commission's finding regarding the pricing, we presume the officers did not enjoy significant discounts when they acquired this equipment.

When considered in light of the undisputed facts, these points do not furnish the requisite evidence to support the Commission's (implicit) finding that the City did not prove, by a preponderance of the evidence, that the officers should have known or suspected that the equipment

was stolen. Given the undisputed facts that the officers purchased electronic equipment that was delivered in the middle of the night in a U-haul or pickup truck; that the "seller" worked for a security company and had not specified exactly how he had obtained the equipment; and that a cash transaction yielded no sales receipt or bill of sale, a reasonable mind would necessarily conclude that police officers should have strongly suspected they were dealing with stolen merchandise. This conclusion remains inevitable even though the officers knew the "seller" to some degree, they were accustomed to receiving discounts from retail establishments, and the price they paid was not dramatically lower than the retail price.

*Disputed Fact: Whether the City Established the Reasonableness of its Action*

A police officer's receipt of stolen merchandise is, without question, unacceptable. Yet, the termination of employment may not be reasonable, for example, where a diligent officer has fallen victim to skilled confidence artists. This case does not present such facts. Rather than reasonably perceiving the need to verify the lawfulness of this endeavor and taking steps to do so, the officers did nothing. The parties and the Commission debated at length over whether a National Crime Information Center (NCIC) check on the serial numbers would have yielded any information at the time the officers purchased the stolen equipment. But this question misses the point: an attempt to locate the serial number and run an NCIC check on it, even if unsuccessful, would demonstrate the officer's diligence. There is a material difference between the police officer who unknowingly purchases stolen merchandise after taking all reasonable steps to insure it is not the product of a theft and the police officer who unknowingly receives stolen property but who, in the face of suspicious circumstances, fails to inquire further.

We thus must consider whether substantial and material evidence supports the Commission's conclusion that the City failed to show a reasonable basis for terminating the officers' employment. In arriving at its conclusion, the Commission relied on three factors extraneous to the events surrounding the purchase. First, the officers apologized to the Commission for their poor judgment. Second, the officers cooperated with the Task Force after learning they had purchased stolen televisions and DVD players. We note that the officers either cooperated with authorities after the Task Force had already confiscated their equipment and identified them as purchasers or voluntarily cooperated after learning that the Task Force had uncovered the theft and street sales. Finally, the Commission characterized the officers as victims because they never recovered the money paid to Messrs. McEwen and Spivey. We view these losses as a natural consequence of imprudent purchases.

Considered in light of the evidence detracting from its weight, this list does not supply the requisite evidentiary support for the Commission's finding. Officers Hearns, Branch, Gray, and Jones should have become suspicious, at the very least, and taken further steps before buying the Samsung merchandise. Instead, without more, the officers purchased stolen equipment from those responsible for the thefts and later responsible for identifying their customers. Moreover, the

newspaper article publicized these events and only exacerbated the damage already done to the Department's reputation.

Our standard of review cautions against the reversal of an agency determination solely because the evidence also supports another conclusion. *See Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). In this case, the evidence points to one conclusion only and necessitates a result opposite from the one reached by the Commission. When a police officer takes delivery of a television and a DVD player in the middle of the night from a U-Haul or pickup truck, fails to request a receipt or bill of sale, seeks no acceptable explanation of how the "seller" obtained his inventory, and neglects to look for a serial number or to consider running an NCIC serial number check, that officer places his honesty and his common sense into question. Either form of impairment in a police officer works to undermine the reputation and standing of those entrusted with exercising the police power of our state. Given the obvious effect of these undisputed facts, the Commission's decision cannot stand upon apologies, cooperation, and the financial consequences of poor judgment. To allow it to so stand would ignore the bulk of relevant evidence without a reasonable basis for doing so. We hold that the conclusion that the City failed to establish a reasonable basis for termination was indeed unsupported by the evidence and therefore arbitrary.

Accordingly, we concur in the chancellor's finding that Commission's decision was arbitrary. For the foregoing reasons, we affirm the judgment of the trial court. The costs of this appeal are taxed to Officers Mauricio Hearns, Henry Gray, Jr., Dorian Branch, Derick Jones, and their sureties, for which execution shall issue if necessary.

_____
DAVID R. FARMER, JUDGE