IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 4, 2021 Session

## SHAHNAZ POURSAIED v. TENNESSEE BOARD OF NURSING

**Appeal from the Chancery Court for Lincoln County**
**No. 15267       J.B. Cox, Chancellor**

### No. M2020-01235-COA-R3-CV

Tennessee's Department of Health ("TDH" or "the Department") sought reciprocal revocation of a registered nurse's Tennessee license after her registered nurse license was revoked in California. After a hearing on the matter, which the nurse did not attend, the Tennessee Board of Nursing ("Board") entered a default judgment against the nurse and revoked her Tennessee license. The nurse appealed to the chancery court and brought an action for damages against the Board. The chancery court affirmed the Board's decision and dismissed the nurse's action for damages. The nurse then appealed to this Court. We affirm the chancery court in all respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Shahnaz Poursaied, Huntsville, Alabama, pro se.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, and Sue Ann Sheldon, Senior Assistant Attorney General, for the appellee, Tennessee Board of Nursing.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

This case involves a reciprocal revocation of a registered nurse license. Shahnaz Poursaied is a registered nurse who, at all times pertinent, was licensed in California and Tennessee. In 2018, Ms. Poursaied accepted a travel nurse assignment with Enloe Medical Center ("Enloe") in Chico, California. While working at Enloe, Ms. Poursaied performed a rectal examination and digital disimpaction on one of her patients. At least three people

witnessed Ms. Poursaied perform the procedure on the patient, and they reported that Ms. Poursaied did not have a doctor's order to perform the procedure and that she performed it against the patient's will because the patient told her to stop several times. Based on these allegations, the Board of Registered Nursing for the State of California ("CA Board") initiated proceedings to revoke Ms. Poursaied's California registered nurse license due to gross negligence, incompetence, and unprofessional conduct. The CA Board entered a default judgment against her when she failed to file a notice of defense within fifteen days after receiving notice of the accusations filed against her. The CA Board then proceeded to take action against Ms. Poursaied's California registered nurse license. Based upon all of the investigatory reports, exhibits, and witness statements that had been filed in the case, the CA Board concluded that the allegations against her were "true and correct."[1] Thus, on July 3, 2019, the CA Board revoked Ms. Poursaied's California registered nurse license.

After receiving notification of the CA Board's revocation of Ms. Poursaied's California registered nurse license, TDH served Ms. Poursaied via certified mail, with notice of its intention to file administrative charges against her Tennessee registered nurse license. In the notice, TDH informed Ms. Poursaied that she had an opportunity to show compliance with the requirements for retaining her license.[2] The Department received the return receipt on September 4, 2019, and it showed that the notice had been delivered to and signed for by Ms. Poursaied.

On October 8, 2019, TDH filed a notice of hearing and charges against Ms. Poursaied with the Tennessee Secretary of State's administrative procedures division and sent copies of the notice to Ms. Poursaied, via both certified mail and first-class mail, which the record shows she received. In the notice, TDH informed Ms. Poursaied that the Board would hear the matter as a contested case on November 20, 2019, and that she had the right to be represented by an attorney, to subpoena witnesses to testify at the hearing, and to

---

[1] California Government Code section 11520(a) provides:

If the respondent either fails to file a notice of defense, or, as applicable, notice of participation, or to appear at the hearing, the agency may take action based upon the respondent's express admissions or upon other evidence and affidavits may be used as evidence without any notice to respondent; and where the burden of proof is on the respondent to establish that the respondent is entitled to the agency action sought, the agency may act without taking evidence.

[2] Pursuant to Tenn. Code Ann. § 4-5-320(c), "[n]o revocation, suspension, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct that warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license."

present evidence at the hearing.[3]  The notice contained a warning to Ms. Poursaied that, if she failed "to enter an appearance and defend, a default judgment may be entered." Thereafter, the administrative procedures division assigned an administrative judge to the case who issued a scheduling order on October 17, 2019, cautioning the parties that any failure to participate in any stage of the proceedings "may result in a default ruling against that party."

Between October 29, 2019 and November 19, 2019, Mark Cole, TDH's attorney, exchanged several emails with Ms. Poursaied concerning whether she would attend the contested case hearing.  In her responses, Ms. Poursaied repeatedly expressed her infuriation over the charges against her, offered defenses against the charges, and informed Mr. Cole that she did not intend to attend the contested case hearing.  The day before the hearing, Ms. Poursaied once again informed Mr. Cole that she did not intend to appear at the hearing:

> I can not attend.  So no I can not attend it at all, not now and not anywhere in future but thanks for being considerate.  I am frustrated and although I do realize obligations that TN board like any regulatory board has towards public safety which gets my highest of respect but since I am seriously harassed and discriminated since Feb 2018 over this case I cant tolerate it any longer.  This is beyond my tolerance as there is limit to ridicule, discriminate and torture.[4]

When the administrative judge and a four-member panel of the Board heard the matter on November 20, 2019, Ms. Poursaied failed to appear and no one appeared on her behalf despite the various warnings that such an occurrence could result in a default judgment.[5]  Consequently, TDH moved for a default judgment and requested that it be allowed to proceed with the case.  The Department supported its motion by introducing evidence that Ms. Poursaied had received proper notice of the proceedings, including the signed return receipt and the emails she exchanged with Mr. Cole about her unwillingness to attend the hearing.

---

[3] The Board is the state agency authorized to license, regulate, establish minimum standards governing the activities of, and hear disciplinary charges against nurses in this state.  *See* Tenn. Code Ann. §§ 63-7-101, -115, -207.

[4] All grammatical errors appear in the original.

[5] The Board consists of eleven members and is authorized to conduct contested case hearings before three or more members and in the presence of an administrative judge.  *See* Tenn. Code Ann. §§ 4-5-301(a)(1), 63-7-116(i), 63-7-201.

After the administrative judge considered this evidence and advised the Board that Ms. Poursaied had received legally sufficient notice of the hearing, the Board voted to grant the motion for default judgment and to proceed without Ms. Poursaied.[6] The Department proceeded by introducing into evidence a certified copy of the CA Board's administrative order revoking Ms. Poursaied's California registered nurse license, an unsworn written statement from Ms. Poursaied to her travel nurse agency defending herself against the California charges, and affidavits from two administrative directors for the Board. The Board then received instructions from the administrative judge,[7] deliberated, and entered an order revoking Ms. Pousaied's Tennessee registered nurse license[8] and her multistate privilege to practice in any other party state.

The Board based its decision to revoke Ms. Poursaied's Tennessee registered nurse license on its finding that the CA Board revoked her California license "due to Gross Negligence and Incompetence and Unprofessional Conduct in her performance of a treatment against the patient's will and without a physician's order in a correctional facility."[9] Relying on this finding, the Board concluded that: (1) facts sufficiently established that discipline was warranted pursuant to Tenn. Code Ann. § 63-1-120(b), which provides for reciprocal discipline of healthcare professionals in this state if they have

---

[6] Tennessee Code Annotated section 4-5-301(b) requires the administrative judge to "rule on questions of the admissibility of evidence, swear witnesses, advise the agency members as to the law of the case, and ensure that the proceedings are carried out in accordance with this chapter, other applicable law and the rules of the respective agency." Furthermore, Tenn. Comp. R. & Regs. 1360-04-01-.15(c) provides that it is the duty of the administrative judge to "advise[] the agency whether the service of notice is sufficient as a matter of law[.]"

[7] The administrative judge instructed the Board that it was the Board's duty to: make findings of fact, determine whether Ms. Poursaied's actions warranted discipline as alleged in the notice of charges, and state its conclusions of law. The administrative judge further instructed the Board that its determination must include an analysis of the evidence that sufficiently demonstrates how the findings of fact support the Board's conclusions. Finally, the administrative judge instructed the Board that its deliberations "must be audible, in public before all parties."

[8] Pursuant to Tenn. Comp. R. & Regs. 1000-01-.04(6)(a)(2), the Board also imposed one Type B civil penalty against Ms. Poursaied in the amount of $500. ("A Type B Civil Penalty may be imposed whenever the Board finds the person required to be licensed . . . guilty of a violation of the Nursing Practice Act or regulations pursuant thereto in such manner as to impact directly on the care of patients or the public."). Ms. Poursaied asserts that the Board's imposition of this civil penalty violated the U.S. Constitution's double jeopardy clause's protection against multiple criminal punishments for the same offense because she had criminal charges pending in California for the same disimpaction incident. This argument is unavailing. Even if the civil penalty imposed by the Board constituted a criminal punishment that triggered the double jeopardy clause, the record contains no evidence that Ms. Poursaied was ever convicted of the criminal charges against her in California. The double jeopardy clause's prohibition against multiple criminal punishments, therefore, has not been implicated.

[9] The record shows that Enloe is a hospital/medical center not a correctional facility.

- 4 -

been disciplined in another state; (2) facts sufficiently established Ms. Poursaied violated Tenn. Code Ann. § 63-7-115(a)(1)(F), which authorizes the Board to discipline a nurse upon proof of unprofessional conduct; and (3) revocation was the appropriate disciplinary action.

Ms. Poursaied filed a petition for review in the chancery court of Shelby County on December 30, 2019, seeking to overturn the Board's decision. After Ms. Poursaied relocated to Huntsville, Alabama, the parties filed an agreed order transferring the case to the chancery court of Lincoln County—the closest chancery court to Ms. Poursaied's new residence.[10] Thereafter, Ms. Poursaied filed a document titled "Tort Claim due to Damage to my health," seeking monetary damages from the state because the state was allegedly "responsible for damage to [her] health as a result of this horrible crime against [her] constitutional rights which has damaged [her] health and reputations." She also filed a motion for sanctions against the Board because it failed to respond to her petition for review.

After hearing the matter, the chancery court entered a memorandum opinion affirming the Board's decision, denying Ms. Poursaied's motion for sanctions, and dismissing her claim for monetary damages. Ms. Poursaied timely appealed and presents numerous issues for our review which we consolidate and restate as follows: (1) whether the chancery court erred in dismissing her claim for monetary damages, (2) whether the chancery court erred in denying her motion for sanctions, and (3) whether the record supports the Board's decision.

STANDARD OF REVIEW

The Uniform Administrative Procedures Act ("UAPA"), Tenn. Code Ann. §§ 4-5-101 to -325, governs judicial review of an administrative agency's decision. *See MobileComm of Tenn., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 101, 104 (Tenn. Ct. App. 1993); *see also City of Memphis v. Civil Serv. Comm'n of City of Memphis*, 238 S.W.3d 238, 242 (Tenn. Ct. App. 2007). Under the UAPA, "[t]he reviewing court's standard of review is narrow and deferential." *StarLink Logistics Inc. v. ACC, LLC,* 494 S.W.3d 659, 668 (Tenn. 2016). The UAPA limits reversal or modification of an agency's decision to situations where the decision is:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;

---

[10] Tennessee Code Annotated section 4-5-322(b)(1)(A)(ii) provides, in pertinent part:

[V]enue for appeals of contested case hearings shall be in the chancery court nearest to the place of residence of the person contesting the agency action or alternatively, at the person's discretion, in the chancery court nearest to the place where the cause of action arose, or in the chancery court of Davidson County.

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A)(i) Unsupported by evidence that is both substantial and material in the light of the entire record;

> (ii) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

This standard of review is narrower than what is generally applied in other appeals because it "reflects the general principle that courts should defer to decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise." *StarLink Logistics Inc.*, 494 S.W.3d at 669. As a result, a reviewing court does not review an agency's factual findings de novo or "second-guess the agency as to the weight of the evidence" even when "the evidence could support a different result." *Id.* Rather, we review an agency's factual findings to determine whether they are supported by substantial and material evidence in the record. Tenn. Code Ann. § 4-5-322(h)(5); *see also Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 508 (Tenn. Ct. App. 2009).

Tennessee Code Annotated section 4-5-322(h) does not define "substantial and material evidence," but Tennessee courts have described it as "less than a preponderance of the evidence and more than a 'scintilla or glimmer' of evidence." *StarLink Logistics Inc.*, 494 S.W.3d at 669 (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). It is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Macon*, 309 S.W.3d at 508 (quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). Thus, under this standard of review, we may not reverse an agency's decision merely "'because the evidence could also support another result.'" *Ramos v. Elec. Emps.' Civil Serv. & Pension Bd. of Metro. Gov't of Nashville & Davidson Cnty*, No. M2020-00324-COA-R3-CV, 2020 WL 7861470, at *2 (Tenn. Ct. App. Dec. 23, 2020) (quoting *City of Memphis*, 238 S.W.3d at 243). We may reverse an agency's decision "'only if a reasonable person would necessarily arrive at a different conclusion based on the evidence.'" *Id.* (quoting *City of Memphis*, 238 S.W.3d at 243).

Tennessee Code Annotated section 4-5-322(h)(4) also authorizes a reviewing court to modify or reverse an administrative agency's decision if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." As we have explained:

> A decision unsupported by substantial and material evidence is arbitrary and capricious. Yet, a clear error of judgment can also render a decision arbitrary and capricious notwithstanding adequate evidentiary support. A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion."

*City of Memphis*, 238 S.W.3d at 243 (citations omitted).

Some of the issues raised in this appeal require statutory intepretation. When construing statutes, our primary objective "is to ascertain and give effect to the intention or purpose of the legislature as expressed in the statute," *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007), "'without unduly restricting or expanding'" the coverage of the statute beyond its intended scope, *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)). To achieve this objective, we look to the plain and ordinary meaning of the language in the statute. *Id.* We must construe the words used "in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). If a statute's language is clear and unambiguous, we "need not look beyond the statute itself to ascertain its meaning." *Id.* at 527. When the language is ambiguous, we must review the statute in its entirety and consider additional extrinsic sources to determine legislative intent. *Sallee*, 171 S.W.3d at 828; *Lee Med., Inc.*, 312 S.W.3d at 527. An ambiguity exists "when a statute is capable of conveying more than one meaning." *Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 768 (Tenn. Ct. App. 2015). Statutory construction presents a question of law that we review de novo without a presumption of correctness. *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020).

## ANALYSIS

As a preliminary matter, we note that Ms. Poursaied is a pro se litigant. This Court has stated the following principles about pro se litigants:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003). Additionally, we allow pro se litigants some latitude in preparing their briefs and endeavor to "give effect to the substance, rather than the form or terminology," of their court filings. *Young*, 130 S.W.3d at 63.

I. <u>Monetary damages</u>.

After filing her petition for review in the chancery court, Ms. Poursaied filed an additional document titled "Present Further Legal Argument," seeking monetary damages for "emotional, medical, professional, financial damages occurred as result of revocation of my nursing license against my human, sexual, and constitutional rights." The chancery court dismissed Ms. Poursaied's claim for monetary damages based on its finding that it was an improper joinder of an original action with an administrative appeal. Ms. Poursaied contends that the chancery court erred in dismissing this claim. For the reasons discussed below, we respectfully disagree.

Thirty-eight years ago, this Court "heartily condemn[ed] that which appear[ed] . . . to be a growing practice, i.e., the joinder of an appeal with an original action and the simultaneous consideration of both at the trial level." *Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 386 (Tenn. Ct. App. 1983); *see also Groves v. Tenn. Dep't of Safety and Homeland Sec.*, No. M2016-01448-COA-R3-CV, 2018 WL 6288170, at \*5 (Tenn. Ct. App. Nov. 30, 2018). We explained as follows:

> [S]uch procedure is inimical to a proper review in the lower certiorari Court and creates even greater difficulties in the Court of Appeals. The necessity of a separation of appellate review of a matter and trial of another matter ought to be self evident. In the lower Court one is reviewed under appropriate Appellate rules and the other is tried under trial rules. In this Court our scope of review is dependent upon the nature of a proceeding. In this case one matter would be limited by rules of certiorari review and the other would be reviewed under 13(d), Tennessee Rules of Appellate Procedure. Like water and oil, the two will not mix.

*Id.*; *see also Groves*, 2018 WL 6288170, at \*5. Thus, when presented with both an action for judicial review and an original action, courts typically dismiss the original action. *See, e.g., Groves*, 2018 WL 6288170, at \*5 (affirming dismissal of original claim because the appellant "impermissibly attempted to join a declaratory judgment action with his petition for judicial review"); *Tenn. Envtl. Council v. Water Quality Control Bd.*, 250 S.W.3d 44, 58 (Tenn. Ct. App. 2007) (concluding that the appellant's claim for breach of contract must be dismissed because it was an improper attempt to join a new cause of action to an action for judicial review of an administrative decision); *Goodwin*, 656 S.W.2d at 387 (holding

that declaratory action "should have been dismissed at the very outset" because it was an improper joinder of "appellate jurisdiction and original jurisdiction in one hearing").

In light of the foregoing authority, we conclude that the chancery court did not err in dismissing Ms. Poursaied's claim for monetary damages because she impermissibly attempted to join her claim for monetary damages with her petition for judicial review of the Board's decision to revoke her Tennessee registered nurse license.

## II. Sanctions.

Ms. Poursaied next challenges the chancery court's denial of her request for sanctions due to the Board's failure to file a response to her petition for review. As found by the chancery court, Tenn. Code Ann. § 4-5-322(f) specifies the procedure to be followed in an appeal of an agency's decision:

> The procedure ordinarily followed in the reviewing court will be followed in the review of contested cases decided by the agency, except as otherwise provided in this chapter. *The agency that issued the decision to be reviewed is not required to file a responsive pleading.*

(Emphasis added). The Board, therefore, was not required to file an answer to Ms. Poursaied's petition for review.[11]

Moreover, a review of the motion for sanctions reveals that Ms. Poursaied requested that the Board be sanctioned pursuant to Rule 11 of the Tennessee Rules of Civil Procedure. Rule 11.02 provides that, when an attorney or party presents documents to a court, he or she certifies that: (1) the document "is not being presented for any improper purpose"; (2) "the claims, defenses, and other legal contentions therein are warranted by existing law"; (3) "the allegations and other factual contentions have evidentiary support"; and (4) "the denial of factual contentions are warranted on the evidence." If an attorney or party violates Rule 11.02, Rule 11.03 authorizes a court to impose sanctions on the violating attorney or party. A party's failure to file an answer does not fall within the purview of these rules. We conclude, therefore, that the chancery court properly denied Ms. Poursaied's request for sanctions.

---

[11] Under the UAPA, the first response required of the Board was to file the administrative record of the proceedings before the Board "within forty-five (45) days after service of the petition, or within further time allowed by the court[.]" Tenn. Code Ann. § 4-5-322(d). Here, the Attorney General's office was served Ms. Poursaied's petition for review on February 25, 2020. Forty-five days from that date was April 10, 2020, but the Tennessee Supreme Court extended this statutory deadline to June 5, 2020. *See In re COVID-19 Pandemic,* No. ADM2020-00429 (Tenn. Feb.12, 2021). Counsel from the Attorney General's office mailed the administrative record to the chancery court on June 5, 2020. We conclude, therefore, that the chancery court did not err in denying Ms. Poursaied's request for sanctions.

III.  Revocation.

    A.  Default judgment.

    Although not clearly articulated in her appellate brief, we discern that Ms. Poursaied argues that the Board's decision to revoke her Tennessee registered nurse license should be reversed because it was made upon an unlawful procedure due to the Board finding her in default and proceeding without her being present to challenge TDH's evidence.  We disagree.

    Pursuant to Tenn. Code Ann. § 4-5-309(a), if, as in this case, a party fails to attend or participate in a contested case hearing before an administrative agency, the agency, sitting with an administrative judge, "may hold the party in default and either adjourn the proceedings or conduct them without the participation of that party[.]"  *See also* TENN. COMP. R. & REGS. 1360-04-01-.15(1)(a) (providing that "[t]he failure of a party to attend or participate in a prehearing conference, hearing or other stage of contested case proceedings after due notice thereof is cause for holding such party in default pursuant to T.C.A. § 4-5-309").  If a default is entered against a respondent, Tenn. Comp. R. & Regs. 1360-04-01-.15(2)(b) authorizes the agency to either adjourn the hearing or proceed and hear the matter "as uncontested as to such respondent[.]"  Thus, the laws of this state give an administrative agency the discretion to proceed without the presence of a party when a default judgment is entered against that party, "having due regard for the interest of justice and the orderly and prompt conduct of the proceedings."  Tenn. Code Ann. § 4-5-309(a).

    Before entering a default judgment against an absent party, an administrative agency must follow certain procedures.  The party seeking a default judgment must "enter[] into the record evidence of service of notice to [the] absent party[.]"  TENN. COMP. R. & REGS. 1360-04-01-.15(1)(b).  The administrative judge then advises the agency regarding whether the service of notice is legally sufficient.  *Id.*1360-04-01-.15(1)(c).  If the service of notice is held to be adequate, the agency may, at that point, decide whether to grant a default judgment.  *Id.*1360-04-01-.15(1)(d).  Upon granting a motion for default, the agency must state the grounds for default and "thereafter[, those grounds must] be set forth in a written order."  *Id.*; *see also* Tenn. Code Ann. § 4-5-309(b).

    Here, the Board adhered to these requirements in deciding to grant the default judgment against Ms. Poursaied.  When Ms. Poursaied failed to appear at the contested case hearing on November 20, 2019, TDH entered into evidence proof that she had been served notice of both the charges and the hearing at her address in Huntsville, Alabama, via certified mail.[12]  Specifically, TDH presented the notice of hearing and administrative charges and the certified mail return receipt signed by Ms. Poursaied on August 14, 2019,

_____

[12] Pursuant to Tenn. Code Ann. § 63-1-108(c), Ms. Pousaied was obligated to keep the Board apprised of her current address.

- 10 -

which, in addition to proving service, established that she had been served "no later than 30 days prior to the hearing date." TENN. COMP. R. & REGS. 1360-04-01-.06(2). After learning that Ms. Poursaied had relocated to Memphis, Tennessee as of October 28, 2019, TDH's attorney forwarded a copy of the notice of hearing and administrative charges, as well as other filings in the case, to Ms. Poursaied at her new address. The attorney also emailed all of the documents to Ms. Poursaied at the email address TDH had on file. Finally, TDH introduced into evidence several emails Mr. Cole exchanged with Ms. Poursaied discussing the upcoming hearing.

Based on this evidence, the administrative judge advised the Board that Ms. Poursaied received legally sufficient notice of the hearing. The Board then voted to grant the motion for default and to proceed without the participation of Ms. Poursaied. Thereafter, the Board entered and served upon Ms. Poursaied a final order stating that a default had been granted and setting forth the grounds for the default.

Ms. Poursaied does not dispute that she received proper notice of the hearing and the charges against her. Instead, she blames Mr. Cole for her failure to appear at the hearing:

> On many occasions appellant informed Mr. Cole of being unwell and being in severe, unbearable emotional pain, [r]eported emotional anguish on being abused, tortured and discriminated by Enloe . . . reported horrible feeling of being damaged and defamed as result of racial discrimination and sexual harassment that has caused humiliation and torture[.] Appellant further informed Mr. Cole of disability and psychological torture by state of California has caused multiple panic attacks[.] Mr. Cole being aware that appellant is very unwell still insisted on conducting hearing.

Contrary to these assertions, however, the evidence in the record shows that Mr. Cole attempted to accommodate Ms. Poursaied so that she could attend the hearing:

> I see that you say you are not able to attend the hearing tomorrow. If you would like a continuance, which is moving the hearing to the next date (2-12-20) then you need to call me and I will try to set up a conference call with the judge.

She refused to accept this accommodation and stated, "I can not [sic] attend. So no I can not [sic] attend it at all, not now and not anywhere in the future but thanks for being considerate." In light of the foregoing, we conclude that the record contains substantial and material evidence establishing that Ms. Poursaied's inaction, not the Board's application of an unlawful procedure, resulted in the entry of a default judgment. Furthermore, Ms. Poursaied's unequivocal statement that she would not ever participate in

- 11 -

the proceedings substantially and materially supports the Board's decision to proceed without her being present.

B. Tenn. Code Ann. § 63-1-120.

Ms. Poursaied next contends that the Board denied her procedural due process by revoking her registered nurse license pursuant to Tenn. Code Ann. § 63-1-120. "'The most basic principle underpinning procedural due process is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner.'" *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 407 (Tenn. 2013) (quoting *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006)). According to Ms. Poursaied, the Board did not hear the charges against her in a meaningful manner because it based its decision to revoke her Tennessee registered nurse license on the CA Board's revocation order without investigating the veracity of the underlying facts. We must again respectfully disagree.

Tennessee Code Annotated section 63-1-120(a)(1)(D) authorizes the Board to discipline the holder of a registered nurse license if the licensee "has been disciplined by another state of the United States for any acts or omissions that would constitute grounds for discipline of a person licensed, certified, permitted or authorized in this state." The statute further provides that a certified copy of the order "memorializing the disciplinary action from the disciplining state shall constitute prima facie evidence of a violation of this section *and shall be sufficient grounds upon which to deny, restrict or condition the license, permit or certificate renewal or application, and/or otherwise to discipline a licensee licensed in this state*." Tenn. Code Ann. § 63-1-120(a)(2) (emphasis added).

Here, TDH introduced into evidence a certified copy of the CA Board's order revoking Ms. Poursaied's California registered nurse license due to gross negligence, incompetence, and unprofessional conduct "in her performance of a treatment against the patient's will and without a physician's order." The act of performing a procedure on a patient against the patient's will constitutes grounds for disciplining the holder of a registered nurse license in Tennessee.[13] *See* Tenn. Code Ann. § 63-7-115(a)(1)(C), (F) (permitting disciplinary action, including suspension of a license to practice nursing, upon

---

[13] Ms. Poursaied correctly points out that, during the November 20, 2019 hearing, the panel members expressed concern about the CA Board's conclusion that Ms. Poursaied's California registered nurse license should be revoked based on her performing the disimpaction procedure without a doctor's order. Initially, the panel members stated that they found it "hard" to say that the act of performing the procedure without a doctor's order constituted a grounds for discipline against her Tennessee license because Tennessee does not require a doctor's order to perform the procedure; it is within "the nursing scope of practice." The panel members ultimately focused on the CA Board's finding that she performed the procedure against the patient's will because they concluded that such an act also constitutes unprofessional conduct in Tennessee. Thus, even if performing the procedure without a doctor's order did not constitute a ground for discipline in Tennessee, performing the procedure against the patient's will did—meaning that Tenn. Code Ann. § 63-1-120 would still provide a basis for discipline.

proof that the nurse "[i]s unfit or incompetent by reason of negligence, habits or other cause" or "[i]s guilty of unprofessional conduct"). The Department, therefore, presented prima facie evidence that Ms. Poursaied was subject to discipline pursuant to Tenn. Code Ann. § 63-1-120.

After concluding that TDH had presented sufficient evidence to authorize disciplinary action against Ms. Poursaied's Tennessee registered nurse license pursuant to Tenn. Code Ann. §63-1-120, the Board considered what sanction to impose. Tennessee Code Annotated section 63-1-120(b) provides that "in the absence of justifying evidence to the contrary, there shall be a rebuttable presumption that the sanction proposed in any such proceeding will be comparable to that in the reporting state[.]" An examination of the record before the Board shows that TDH introduced into evidence a certified copy of the CA Board's final order revoking Ms. Poursaied's California license,[14] numerous emails from Ms. Poursaied claiming she was discriminated against and sexually harassed by Enloe personnel on the day of the incident, and an unsworn written statement from Ms. Poursaied to the travel agency she worked for claiming that the patient never told her to stop the procedure.[15] The Board considered all of this evidence during its deliberations and, after reading Ms. Poursaied's written statement, the Board expressed concern about the CA Board's finding that she performed the procedure against the patient's will. The Board ultimately determined, however, that it must "go with what the [CA] Board decided" because Ms. Poursaied failed to appear. It was her word in an unsworn written statement against the contrary testimony of the three witnesses presented to the CA Board. In other words, Ms. Poursaied failed to present "justifying evidence to the contrary" to rebut the presumption that the Board should impose the same sanction imposed by the CA Board.

Recognizing that the record is devoid of "justifying evidence to the contrary," Ms. Poursaied again fails to take responsibility for her failure to appear at the hearing.[16] She

---

[14] Pursuant to Cal. Gov't Code § 11520(c), Ms. Poursaied had seven days to file a motion with the CA Board requesting that the judgment be vacated and stating grounds supporting vacating the judgment. The record contains no evidence showing that Ms. Poursaied, at any time, filed a motion requesting that the CA Board vacate its judgment. Furthermore, after expiration of the seven-day time period to file a motion to vacate, Ms. Poursaied had thirty days to seek judicial review of the CA Board's decision pursuant to Cal. Gov't Code § 11523. The record contains no evidence that she filed a petition for judicial review of the CA Board's decision.

[15] Mr. Cole explained to Ms. Poursaied that he did not represent her, but she emailed him the written statement and insisted that he submit it to the Board on her behalf. Although he had no duty to defend Ms. Poursaied, Mr. Cole again attempted to accommodate her by introducing her written statement into evidence for the Board's consideration.

[16] Following oral arguments, Ms. Poursaied filed a motion requesting that this Court permit her to submit additional evidence "of crime by California board of nursing against my bill of right," including "medical records and confidential information of [the patient in California] on the day of the incident." Review of an administrative agency's decision "is confined to the record made before the agency," except "[i]n cases of alleged irregularities in procedure before the agency[.]" Tenn. Code Ann. § 4-5-322(g);

blames the Board, arguing that the record is devoid of such evidence because the Board failed to conduct an independent investigation of the underlying facts in the case before the CA Board. This Court is unaware of any Tennessee case requiring an administrative agency to conduct an independent investigation of the underlying facts of a reporting state's final order before imposing sanctions pursuant to Tenn. Code Ann. § 63-1-120, and an examination of the statute's language does not reveal such a requirement. Rather, the plain language of the statute provides that an agency may discipline the holder of a Tennessee license if the licensee "has been disciplined by another state," that a certified copy of the order "memorializing the disciplinary action from the disciplining state shall constitute prima facie evidence of a violation of this section," and that the order from the disciplining state "shall be sufficient grounds upon which to . . . discipline a licensee licensed in this state." Tenn. Code Ann. § 63-1-120(a)(1)(D), (a)(2). A certified copy of a disciplinary order from a disciplining state, by itself, is sufficient to authorize an administrative agency to discipline a license holder in Tennessee. Nowhere in the statute does it contain language, express or implied, providing that the agency may not rely on the certified copy of the disciplining state's order without conducting an investigation of the underlying facts in the disciplining state. Ms. Poursaied's argument is without merit.

Based on the foregoing, we conclude that the Board did not violate Ms. Poursaied's right to procedural due process. We also conclude that the Board's final order is supported by substantial and material evidence and is not capricious or arbitrary.[17]

CONCLUSION

The judgment of the chancery court is affirmed. Costs of this appeal are assessed against the appellant, Shahnaz Poursaied, for which execution may issue if necessary.


_/s/ _*Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE

---

*Metro. Gov't of Nashville & Davidson Cnty. v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977). Ms. Poursaied does not allege irregularities in the procedure before the Board. Therefore, considering evidence outside the record before the Board is not appropriate in this case. The motion is denied.

[17] We note that, in light of its concerns with the CA Board's decision, the Board included in its order revoking Ms. Poursaied's Tennessee registered nurse license that she could "petition the Board for reinstatement." During deliberations, the Board discussed including this language because it wanted Ms. Poursaied to know that Tennessee does not have permanent revocation of a nurse's license. However, the Board stressed during its deliberations that, before Ms. Poursaied could have her license reinstated, she needed to "take whatever steps she needs to," particularly that she "come before the Board," "plead her case," and tell her side of the story. In other words, Ms. Poursaied must appear before the Board and present evidence defending herself.